Pugh *v.* Texarkana Light & Traction Company (1).

and

Pillow *v.* College Hill Light & Traction Company (2).

Opinion delivered March 16, 1908.

1. Street railway—liability of construction company.—One who sells and delivers to another a street railway properly constructed is not liable for personal injuries subsequently caused by a defect in the roadbed of the railway. (Page 44.).

2. Same—duty as to repair of highway.—It is the duty of a company operating a street railway to build and keep the space of the highway occupied by its roadbed (which extends at least to the ends of the cross-ties) graded substantially with the level of the street, so as to permit vehicles to cross without difficulty. (Page 45.)

3. Same—negligence—defense.—While street railway companies are not bound to furnish roads upon which it will be safe for horses to run away, they are bound to furnish reasonably safe roads; and if they do not, and such failure is the proximate cause, or one of the proximate causes, of a traveller's injuries, it is no defense that the traveller's horse was at the time running away, or was beyond his control. (Page 45.)

Appeals from Miller Circuit Court; (1) *Antonio B. Grace,* Judge, on Exchange of Circuits; (2) *Jacob M. Carter,* Judge; reversed as to Texarkana Light & Traction Company; affirmed as to College Hill Light & Traction Company.

*Dan W. Jones* and *Scott & Head,* for appellants.

1.    While it is held that street railways are not an additional burden of servitude upon the streets, yet the theory upon which this adjudication is based is that they are not in fact obstructions, that, after being erected, the public use of the streets in the ordinary way of travel is not obstructed. In this case the street railway company had appropriated to its *exclusive* use, by the erection of the bridge or trestle causing the injury, that part of Broad Street which was then occupied by the bridge. This bridge was of such a nature that no carriage could cross the track at that point at right angles therewith, and it likewise rendered wholly impracticable the longitudinal use of the street by the public in vehicles. The public has a right to the use of all of the street and every part thereof, and any obstruc-

tion which permanently withdraws from the public this right is a nuisance. 1 Wood on Nuisances, § § 258, 259, 260, 266, 269, 274, 285, 301; Ray on Imp. Duties Personal, 243, 252; 1 Joyce on Elec. Law, 2 Ed. § § 379, 381; 30 S. W. 533; 48 N. W. 1007; Elliott, Roads & Streets, § 779; 67 N. E. 921; 93 S. W. 1057; 1 Thompson, Neg. § § 1233, 1234; 2 Id. § 1347; 23 Atl. 281; 1 Pac. 253; 37 Pac. 1012; 33 Fed. 320; 29 Atl. 1005; 58 S. W. 508; 11 S. W. 946; 2 Wood, Railroads, 970, § 269 note 1, 976; 19 S. W. 366; 27 S. W. 918; 27 S. W. 920; 37 Atl. 119; 1 Lewis, Em. Dom., 2 Ed., § 117; 11 S. W. 943; 54 Ark. 131; 68 Ark. 291; 79 Ark. 490; 61 Ark. 141. He who erects, as also he who maintains, a nuisance is liable for injuries resulting therefrom. 2 Cooley on Torts, 1282; 1 Id. 250-1; Ray on Imp. Duties, Personal, 53; Webb's Pollock, Torts, 259, 530, note; 2 Wood on Nuisances, § 838. Aside from the question of the culvert being a nuisance, there was evidence from which the jury might have found that the rails of the street railway west of the bridge were elevated to such an extent as to be a nuisance. A nuisance can not be justified on the ground of necessity. 42 N. W. 365; 59 Fed. 237; 35 N. W. 572.

The culvert not being authorized by the franchise, its construction was a nuisance. 1 Wood on Nuisances, § 300; 50 Ill. 210; 36 Atl. 73; 9 So. 525; 68 Pac. 360; 31 N. W. 327; 27 Am. & Eng. Enc. of Law (2 Ed.), 94.

2. Where two or more acts of negligence concur in producing an injury, each of said acts is, in a legal sense, a proximate cause.

(a) If a person do an act which is wrong *per se,* or in the nature of a public nuisance, he becomes, in respect to it, an insurer of the public, and is liable for any injury that may happen in consequence of it, to a person in the exercise of ordinary care, irrespective of any question as to the degree of skill or diligence exercised by himself or his agents or servants to prevent such injury. 1 Thompson, Negligence, § 60, p. 63; 1 Cooley, Torts, 101; 82 Ind. 426.

(b.) As to the runaway horse being the proximate cause: 61 Ark. 141; 79 Ark. 490; 37 Pac. 1012; 1 Sutherland on Dam-

ages (3 Ed.), § 26 p. 80; 5 Thompson, Negligence, § § 6089-6091; 17 Atl. 249; 18 Am. Rep. 239; 43 Atl. 143.

(c.) It is not necessary to show that the negligence complained of was the nearest cause in point of time. It may be remote in point of time, and yet be proximate in point of causation. 4 Otto, 469, 24 Law. Ed. 256; 111 U. S. 228; 166 U. S. 521; 1 Sutherland, Damages, § 39; 1 Thompson Negligence, § 75; 3 *Id.* § 2779; Watson, Damages, § 160; 61 Ark. 381; 73 Ark. 112; 75 Ark. 133; 37 Pac. 721; 22 N. E. 14; 96 N. Y. 264; 65 N. W. 676; 41 Pac. 995; 36 N. Y. 39; 69 S. W. 734; 42 Pac. 42; 61 S. W. 678; 53 Mo. 290; 2 S. W. 439; 26 Atl. 189; 18 Am. Rep. 239; 56 N. J. L. 370; 66 S. W. 609; 32 N. E. 285; 46 N. E. 17; 116 Ga. 152; 68 Ga. 572.

(d.) It is not necessary, in order to fix the liability upon the defendants, that they should have anticipated the particular injury that resulted, or injury in the precise manner that it occured. It is sufficient if it appears to have been a natural and probable consequence, and if they could have anticipated that some injury would occur. 1 Thompson, Negligence, § 59, p. 62 and note; Watson on Damages, § § 150-154; 1 Cooley on Torts, 125-7-8; 28 N. E. 446; 40 Am. Rep. 230; 69 N. W. 640; 48 N. W. 559; 93 S. W. 951; 89 Pac. 715; 42 N. W. 555; 12 Pac. 219; 86 N. W. 76; 101 S. W. 1025.

3. The College Hill Company was the holder of the legal title to the street railroad. It had not leased the road to the Texarkana Company, and is not absolved from liability for the negligence of the employes of the latter company. No deed had been tendered, nor was one passed until long after the injury. 17 Am. & Eng. Enc. of Law (1 Ed.), 896 *et seq.;* 67 Ark. 123; 28 S. C. 401.

*William H. Arnold,* for appellees.

1. The evidence is conclusive that at the time the track was delivered over to the Texarkana Light & Traction Company it was in good condition; but, even if there had been defects in the construction of the road, the liability of the College Hill Light & Traction Company ceased when under its contract of sale, it delivered the property to, and it was accepted by, the first named company. 1 Thompson, Negligence, § 686; 26 L. R. A. (Pa.),

504; 131 Pa. 416; 147 Pa. St. 199.  The ordinance expressly shows that the franchise was transferable; moreover, there is statutory authority for such transfer. Kirby's Digest, § 886. When a lease or sale of a street railroad is authorized by law, the lessee or vendee is alone liable for the negligence of its operation.  193 Pa. St. 229; Nellis on Street Surface Railroads, 275.  This court in the Daniels case, 68 Ark. 171, seems to have settled the law contrary to the liability of the College Hill Company.  See also 100 S. W. 759; 76 Ark. 352; 114 Fed. 100; 55 Ark. 510; 196 U. S. 152; 87 S. W. 995; 89 S. W. 75.

2.  True, the precise injury need not be anticipated, in order that a party may be held liable for his acts of negligence; yet it must be some like injury and some like intervening agency that did occur, to render the act of negligence the proximate cause.  Where there is an intervening agency which could not have been anticipated as the natural and probable result of an act of negligence, such negligence can not be treated as an efficient concurring cause, but will be considered as a remote and not a proximate cause.  55 Ark. 510; 139 U. S. 223; 21 Am. & Eng. Enc. of Law, 493; 90 Tex. 223; 124 Fed. 113; 100 S. W. (Ark.), 764; 24 U. S. App. 17; 95 U. S. 117; 55 Fed. 949; 94 U. S. 469; 85 Pa. St. 293; 10 Am. Rep. 217; 88 Hun, 10; 52 Am. Rep. 74; 49 N. Y. Super. Ct. 406; 66 Ark. 68; Wharton on Negligence, § 134; 17 N. E. 200; 69 Ark. 402; 76 Ark. 430.

3.  The building of the trestle was not an act of negligence; but, even if it had been, it could not reasonably have been anticipated as a natural and probable consequence that there would be a runaway down Beech Street to Broad which would collide with the bridge and produce an injury similar to that complained of in these cases.  56 Ark. 387; 101 Fed. 915; 9 Atl. 430; 106 Mich. 512; 107 Mich. 627; 57 N. W. 117.  On the question of the runaway horse as the proximate cause of injury:  150 Pa. St. 145; 97 Mass. 258; Id. 266; 98 Mass. 587; 100 Mass. 49; 30 Wis. 250; 32 Me. 46; 38 Me. 204; 42 Me. 346; 51 Me. 127; 127 Pa. St. 184; 122 Pa. St. 601; 98 N. W. 934; 71 N. W. 888; 74 N. W. 815; 20 N. E. 105; 58 Atl. 283; 9 Atl. 430; 99 Wis. 361; 103 Wis. 66; 10 Am. Rep. 217; 39 Am. Rep. 603; 75 N. Y. 605.

BATTLE, J.  The plaintiffs in these cases, who are appel-

lants in this court, in separate actions, sued for damages on account of an accident which occurred in the city of Texarkana, in this State, on the fourth day of July, 1904, as follows: Plaintiffs and others were riding in a two-seated surrey, and the horse drawing the same became frightened on Beech Street, and ran down grade three blocks and across two streets into Broad Street and upon a culvert in the street railway, which was operated by the Texarkana Light & Traction Company in that street. The surrey was thereupon overturned, and the occupants were thrown out, and some of them, if not all, were thrown upon the railway. A street car passing at that time ran upon those upon the railway, killing two, and crushing the feet or part of the legs of Maude E. Pillow, one of the plaintiffs. Mrs. Bayne Pugh, the other plaintiff, was severely bruised.

Mrs. Bayne Pugh alleged in her complaint "that the College Hill Light & Traction Company was, on the 4th day of July, 1904, the owner of an electric railway, then built and constructed along Broad Street past Beech Street in the city of Texarkana, in this State, from the intersection of Broad and Hazel streets to College Hill about two miles in length, and at the same time and for some time previous the Texarkana Light & Traction Company was operating said line of railway under some arrangement or agreement between said defendants, the nature of which was unknown to the plaintiff. That on the said 4th day of July, 1904, the plaintiff was riding in a two-seated carriage or surrey, accompanied with relatives and friends, when in passing along Beech Street, at or near Sixth Street, going toward said Broad Street, the horse drawing said surrey became frightened at the explosion of a fire cracker, or some other cause unknown to plaintiff, and proceeded to run along said Beech Street, which descends toward Broad Street, and the driver was unable fully to check or control said horse, and, running down on the west side of said Beech Street, pulled the left front wheel of said surrey against an obstruction placed by said College Hill Light & Traction Company near the center of Broad Street, and said obstruction constituting a part of the bed or track of said College Hill Light & Traction Company's railroad, and which obstruction said wheel could not and did not mount, and said horse turned toward the right, pulled said wheel against

the rail of said track adjacent and near to said obstruction, where the track had not been constructed and was not then maintained for one foot outside of said rail to conform with the character of material with which the balance of said street adjacent thereto had been constructed, but was constructed and maintained of softer material that had not been made solid and compact, and said wheel sinking low on said track close to, and hugging said rail, could not and did not mount said rail, and said horse, pulling said wheel along and against said rail, caused said surrey to be overturned, whereby plaintiffs was thrown from said surrey upon the track of said railway, at or near the intersection of Beech and Broad streets, Beech Street being at right angles to Broad Street.

"That the ordinance or franchise from the city of Texarkana under which the said College Hill Light & Traction Company had constructed said line of railway, and under which said Texarkana Light & Traction Company was then maintaining and operating said line, required the rails of said track to be so laid as to conform to the surface of the street, yet the said railroad was, while said surrey struck said obstruction, by said College Hill Company so carelessly, negligently and in violation of said ordinance constructed and maintained and was by the defendant Texarkana Company so carelessly, negligently, and in violation of said ordinance maintained and operated, with full knowledge of said obstruction, during said 4th day of July, 1904, that where said wheel met with said obstruction the rail of said track resting on said obstruction was at an elevation of fifteen inches above the surface of Broad Street adjacent thereto.

"Said ordinance further provides that the space between the rails of said track and for one foot outside each rail should be so constructed as to conform with the character of material with which the balance of the street was composed, and that the balance of the street had been and was then improved with a gravel coating pressed down and made compact to the depth of eight inches, forming a firm and solid roadbed, yet said College Hill Company carelessly, negligently, and in violation of said ordinance had constructed, and during said 4th day of July, 1904, was carelessly, negligently and in violation of said ordinance maintaining, its said track for one foot outside the rail, where said

left front wheel struck and ran alongside of said rail, with earth of softer nature than gravel and with gravel of less than eight inches in depth, and not pressed down and made compact as the balance of said street and the defendant, the Texarkana Company, was on and during said 4th day of July, 1904, carelessly, negligently and in violation of said ordinance maintaining and operating said railway at said point in said careless and negligent condition, contrary to the provisions of said ordinance and with full knowledge of such condition.

"That by reason of the overturning of said surrey plaintiff was violently thrown or fell from her seat in said surrey upon the ground, and was thereby greatly bruised, wounded, and injured, upon her head, shoulders, back, sides and hips, and thereby made sick and suffered great physical and mental pain and said injuries remained upon her unhealed for the ensuing six months, during all which time she suffered said pain. To her damage in the sum of one thousand dollars.

"The second count, after like allegations as in the first as to the ownership of said railway by said College Hill Company and being operated by the Texarkana Company, alleged that, under the same ordinance heretofore referred to, it was provided that all cars to be used on said line should be of modern equipment and provided with fenders, yet the defendant, the Texarkana Company, carelessly, negligently, in violation of said ordinance, on said 4th day of July, 1904, failed and neglected to use cars provided with air brakes, which were then of modern improvement, and customarily used upon street railways, and failed to provide fenders for its cars; said ordinance further provided that the rate of speed at which cars might be operated on said line of railway along on Broad Street, and past Beech Street, might be fifteen miles per hour, yet the rate of speed at which the car doing said damage was then carelessly, negligently, and in violation of ordinance being run by said Texarkana Company was greater than fifteen miles per hour, towit, at a speed of twenty-five miles per hour.

"That while plaintiff was lying at, on or near the track of said railway at or near the intersection of Broad and Beech streets, where she had been thrown, and before she was able to arise, a car of the Texarkana Company came along upon the

track going west on said Broad Street at said careless and negligent speed, and without any brakeshoe upon one of the front wheels of said car, and in charge of a motorman placed in charge of the car by said Texarkana Company, and said motorman approached and came across the crossing of said Beech and Broad streets at said careless and negligent speed, and was keeping no lookout for persons or vehicles approaching or attempting to cross or enter upon said railway tracks at or near the intersection of said streets, as was said motorman's duty, and without any airbrakes or fenders on said car and without any brake or shoe on one of the front wheels of said car, whereby said motorman was unable to stop said car as quickly as he otherwise could, and said motorman, without observing, as he could and should have done, the approach of said approaching horse and surrey, carelessly and negligently ran said car against said overturned surrey, and against plaintiff lying beneath said surrey, whereby she received additional scratches, wounds and bruises upon her head, neck, shoulders, back, side and hips, whereby she was made sick and then and for a long time thereafter suffered great physical and mental pain, to her damage in the additional sum of one thousand dollars. The injuries complained of directly resulted from all the alleged causes of negligence, combined, co-acting to produce a common result, towit, the damage and injuries complained of.

"Wherefore judgment is prayed against said defendants in the sum of two thousand dollars, and a lien upon the property of the defendants, declared in accordance with the statutes."

The defendants filed separate answers, and severally denied that the street railway constituted an obstruction in Broad Street; that they unskillfully, or negligently constructed or maintained it (the street railway). The College Hill Light & Traction Company denied that it owned or operated any cars; and the Texarkana Light & Traction Company denied that it carelessly or negligently operated the cars on the street railway. They deny that plaintiff was violently thrown to the ground or was greatly bruised or injured, or damaged in the sum of $1,000, or any other sum.

They alleged that, if plaintiff was injured, the proximate cause of the accident was the negligent riding by plaintiff in a

surrey drawn by a vicious and unruly horse and the running away of the horse with the surrey down Beech Street and rapidly turning to the right when it reached Broad Street and overturning the surrey by reason of its momentum and throwing the occupants to the ground; and that the accident was not caused by or connected with the construction of the street car track.

The action of Maude E. Pillow was only against the College Hill Light & Traction Company. She was in the surrey with Mrs. Pugh at the time of the accident, and made substantially the same allegations contained in the complaint of Mrs. Pugh. She further alleged that the motorman in charge of the car carelessly and negligently ran it upon and over both of her feet or legs, and thereby greatly bruised and mangled both of her feet and the lower part of her legs, and that to save her life both of her legs were amputated; and that she was thereby damaged in the sum of $50,000, for which she asked judgment.

The answer of the defendant was substantially the same as it was in the first case.

There was a separate trial in each action. The evidence in both cases was substantially the same. After it was closed the court instructed the jury in each case to return a verdict in favor of the defendants which was done.

The College Hill Light & Traction Company was organized, among other things, to build and sell street railways, and not for the purpose of operating them. It constructed the railway in question under a contract with the Texarkana Light & Traction Company, and sold the same to the latter company. The sale was completed by delivery in May, 1904, and from that time the purchaser had exclusive possession thereof, and operated it, and was doing so at the time of the accident on the fourth day of July, 1904. There was no evidence that it was not properly constructed at the time of the delivery, but on the contrary the evidence tends to show that it was. The verdict in favor of it in both cases is correct.

There was a drain across Broad Street, and across this drain a culvert was constructed as a part of the street railway in question. At this culvert the accident occurred. R. A. Munson, who visited the scene of the accident soon after it occurred, testi-

fied in both cases.  His testimony is correctly and substantially stated by appellees, in part, as follows:

"That he went to scene of the accident and saw where the surrey struck the culvert.  This culvert is twelve or fourteen inches above the drain and about seven feet long.  The surrey struck the timber or plank which is about four inches thick laid lengthwise along the top of the ties.  The mark was on the left end of this plank.  And there was an indication of where the wheel had struck the rail about two feet from the mark on the plank, and the rail was a little above the graveling of the street, possibly three inches, and showed where the wheel had slipped along the rail quite a little distance as it plowed out the gravel from the rails.  There was a sliding against the rail for, I think, six or seven feet."

Neither of the street railway companies acquired the exclusive right to so much of the streets as was occupied by the street railway, but subject to the right of the public to use it.  Their right is concurrent with that of the general public, and is accompanied with the implied condition that the road shall be so constructed, maintained and operated as to produce no unnecessary or unreasonable interference with public or private rights, so "that the free use of the whole street by the public shall not be materially impaired."  It is the common-law duty of the company operating the road "to keep the space of the highway occupied by its roadbed (which extends at least to the ends of its crossties) properly graded and in good repair, so as not to be an obstruction to travel across the roadbed longitudinally against it"—"must be built substantially with the level of the street, so as to permit vehicles to cross without difficulty."  *Limburger* v. *San Antonio Rapid Transit Street Railway Company* (Tex. Sup.), 30 S. W. 533; *Detroit City Ry.* v. *Mills* (Mich.), 48 N. W. 1007; *Cunningham* v. *City of Thief River Falls* (Minn), 86 N. W. 763; *State* v. *Inhabitants of City of Trenton* (N. J. Sup.), 23 Atl. Rep. 281; *Wellington* v. *Gregson* (Kan.), 1 Pac. Rep. 253; *Groves* v. *Louisville Ry. Co.* (Ky.), 58 S. W. Rep. 508; *Heilman* v. *Lebanon & A. St. Ry. Co.* (Penn.), 37 Atl. Rep. 119.

The rule stated and sustained by this court in *St. Louis, I. M. & Sou. R. Co.* v. *Aven*, 61 Ark. 152, governs in cases like this.  It is as follows:  "They (municipalities) must use proper

care and vigilance to keep their streets and highways in a reasonably safe and convenient condition for travel. This is an absolute duty which they owe to all travellers; and when that duty is not discharged, and, in consequence thereof, a traveller is injured, without any fault on his part, they incur liability. They are not bound to furnish roads upon which it will be safe for horses to run away, but they are bound to furnish reasonably safe roads; and if they do not, and a traveler is injured by culpable defects in the road, it is no defense that his horse was at the time running away, or was beyond his control."

If, then, in this case the Texarkana Light & Traction Company failed to maintain the street railway in the condition it was in duty bound to do, and the defect in the railway caused by such failure was the proximate or concurrent proximate cause of Mrs. Pugh's injuries, it would be liable for damages caused by such neglect. The testimony of Munson, if true, tended to prove that the company had failed to maintain the railway in the manner it should, and that this failure was in part the cause of the accident. The court, therefore, erred in instructing the jury to return a verdict in favor of the Texarkana Light & Traction Company.

The judgment in Maude E. Pillow *v.* College Hill Light & Traction Company is affirmed, and in Bayne Pugh *v.* Texarkana Light & Traction Company and College Hill Light & Traction Company it is affirmed as to the latter company and reversed as to the Texarkana Light & Traction Company, and the cause is remanded for a new trial.