COHEN *v.* RAMEY.

4-6159 147 S. W. 2d 338

Opinion delivered January 20, 1941.

—PAGE 714]

*Woolsey & McKenzie, Paul E. Gutensohn* and *Warner & Warner,* for appellant.

*J. E. Yates* and *Partain & Agee,* for appellee.

HUMPHREYS, J. This is an appeal from judgments rendered on February 23, 1940, in favor of Flora Ramey for $2,000 and in favor of W. R. Ramey in the sum of $1,200 in a suit brought by them against appellant in the circuit court of Franklin county on November 14, 1939, for injuries which each received through the alleged negligence of appellant in operating his automobile on highways Nos. 64-71 south of the Fort Smith-Van Buren bridge in Sebastian county so as to strike the automobile in which appellees were riding and injure them.

After suit was filed and service had upon appellant he appeared specially in court and filed a motion to quash the service of summons upon him on the ground that he was a resident of the city of Fort Smith, that appellees were residents of Crawford county, that the accident occurred in Sebastian county, and that the venue was not properly laid in the Ozark district of Franklin county where the suit was brought. He alleged in his motion that while he was in Ozark in Franklin county for the purpose of delivering an address at a banquet summons was served upon him; that apprehending he might be sued while in Franklin county he was induced to remain and deliver the address by a statement of the circuit clerk that his office had been closed for the night, and that no suit had been filed and none would be filed that night, so he remained after receiving such assurances from the clerk, and for that reason the summons should be quashed. Appellant introduced evidence to sustain the allegations contained in the motion, but there is a total absence of any evidence connecting appellees or their attorneys with the assurances given by the circuit

clerk to appellant. There is no evidence to show that there was any connivance between appellees or their attorneys and the circuit clerk to induce appellant to remain in Franklin county to deliver his address at the banquet.

Under the law as it existed when appellees were injured and at the time of the trial of the case a transitory suit for personal injuries might be brought in any county where service of summons could be obtained upon a defendant. Appellant has cited a number of cases of our own court to the effect that even under the law as it existed a person seeking to recover damages from another could not inveigle the other into a county other than that of his residence and through such fraud procure service upon him, but none of the cases cited are authority for quashing the service of summons unless the party bringing the suit was a party to the fraud or conspiracy. The trial court, therefore, properly overruled the motion to quash the service of the summons.

The defenses to the alleged cause of action consisted in a denial that appellant was negligent in the operation of his automobile resulting in the injuries to appellees and a plea of contributory negligence on the part of appellees.

The record reflects that about eleven o'clock a. m. on May 17, 1938, appellees were riding in an automobile on highways Nos. 64-71 about a quarter of a mile south of the Fort Smith-Van Buren bridge, which runs north and south; that the concrete highway was about forty feet wide; that after leaving the bridge en route to Fort Smith they decided to stop at Massey's Auto Salvage Place about a quarter of a mile south of the bridge; that Massey operated a second-hand car and salvage business on the east or left-hand side of the highway traveling south, and that a gravel driveway leads from the main highway to his place of business; that Flora Ramey was driving the car, and that she began to slow down and signal about one hundred yards before reaching Massey's place of business that she was going to cross the concrete highway into the gravel road that led into Massey's place of business; that while signaling and

after turning slightly to her right so as to permit the cars immediately in front of her and immediately behind her to pass she continued to give the warning signal as she proceeded across the concrete, and after crossing same and getting on to the gravel road appellant's car ran into and struck their car; that as she turned to her left to cross the highway into the gravel road she observed appellant's car about two hundred yards back of her, and said that he must have been driving his car at a terrific rate of speed to strike her car so soon after she had seen his automobile; that before the impact appellees had crossed over the concrete pavement and were on their side of the road when they were struck by appellant's automobile. A witness who was working at the Massey place of business testified that appellant was traveling at the rate of about sixty miles an hour as he approached and ran into the Ramey car.

Appellant testified that when he was driving off the bridge on to the highway which was running south he was traveling at the rate of about forty miles an hour, and that he discovered appellees' car about a block or three hundred feet ahead of him driving about the same rate of speed, and that he did not see any signal coming from the car of appellees indicating that they were going to cross the highway, and that when he was about forty feet behind appellees' car he turned to the left in order to pass them after sounding his horn; that appellees did not stop their car, but suddenly turned their car to the left in front of him, and that he ran into their car as they entered the gravel road leading to the Massey place.

On cross-examination he testified as follows: "Q. How far was that car ahead of you when you first saw it? A. Maybe a block, 300 feet. Q. 300 feet ahead of you? A. Yes, sir. Q. 100 yards? A. Yes, sir. Q. As you went down toward the Massey salvage place down there, what distance did it maintain ahead of you? A. We were going about the same speed. Q. You were going about the same speed. A. Yes, sir. Q. It continued on ahead of you at about the same speed, about a block ahead of you? A. It was some distance ahead of me, I want to be honest about this thing. Q. I thought you were going to be. A.

It might have been less than a block. Q. And it might have been more? A. I doubt it. Q. If it was less, how much less? A. I couldn't say, I didn't measure the distance. Q. Was it a half a block? A. I couldn't say. Q. Was it a third of a block? A. I couldn't say. Q. Was it a tenth of a block? A. I couldn't say. Q. Was it a twentieth of a block? A. I don't know what that is, it was a reasonable distance ahead of me.''

In addition to contending that the service of summons should have been quashed by the trial court appellant contends that the judgments should be reversed because they were guilty of contributory negligence as a matter of law; that the court erred in giving appellees' requested instruction No. 2; that the court erred in giving appellees' requested instruction No. 3; that the court erred in permitting prejudicial argument by appellees' attorney, Mr. Partain, and that the verdicts were excessive.

(1) We cannot agree with learned counsel for appellant that the undisputed evidence shows that appellees were guilty of contributory negligence, and that the trial court should have declared as a matter of law that they were. According to the testimony of appellees, a signal was given some three hundred feet before they reached the Massey place that they intended to cross the highway for the purpose of entering same; that in order to do so they turned slightly to the right to allow a car in front of them and one in the rear of them to pass and then continued to give the signal that they were going to cross said highway and did so having observed that appellant's car was some two hundred feet behind them; that after they had succeeded in crossing the concrete pavement appellant turned to the left, crossed the highway and ran into their car. If this testimony was believed by the jury appellant was guilty of negligence in crossing the highway and running into their car. A disinterested witness who was working at the Massey place of business testified that appellant was driving at a high rate of speed, perhaps sixty miles an hour, as he approached and ran into appellees' automobile.

It is true that appellant testified he was driving at a conservative rate of speed and that appellees suddenly turned their car in front of his car as he was about to pass them after he had blown his horn, and that the collision was due to their contributory negligence in doing so, but the jury by their verdict adopted the version of the affair given by appellees and not that testified to by appellant.

To say the least of it the evidence was in sharp conflict on the question of contributory negligence. This issue was submitted to the jury for determination and their verdict is conclusive as the evidence upon the point was in sharp conflict.

It cannot be said, therefore, that as a matter of law appellees were guilty of contributory negligence.

(2) Instruction No. 2, given at the request of appellees, was objected and excepted to. It is quite lengthy, and we do not incorporate it in this opinion. We have read it carefully and think it submitted the issues of negligence, contributory negligence and injuries clearly and specifically in language very understandable. We do not think it was abstract in any sense. It is said that it contained no mention of appellees' stopping their car on the right-hand side of the road before giving the signal and attempting to cross same. Appellant testified himself that they did not stop. Appellees' testimony was to the effect that they simply stopped for the moment at the time they were signaling that they would cross the highway to allow a car immediately in front of them and one immediately behind them to pass and then continued to signal and cross over the pavement.

The court did not err in giving this instruction.

(3) Appellant objected and excepted to the giving of instruction No. 3, which is as follows: "You are instructed that it is the law of the road that the automobile in front has the superior right to the use of the highway for the purpose of leaving it on either side to enter intersecting roads and passageways and the traveler behind must, in handling his car, do so in recognition of the superior right of the traveler in front."

This instruction follows the rule laid down in the case of *Madison-Smith Cadillac Co.* v. *Lloyd*, 184 Ark. 542, 43 S. W. 2d 729, and we think this rule is applicable to the facts in the instant case. The short or temporary stop that Flora Ramey made to allow two cars close to her to pass did not in any sense amount to a parking or stopping on the roadside. It was a momentary or temporary stopping and a thing she had to do before she could continue the turn to the east side of the road she was making. As stated above, appellant himself testified that she did not stop. The momentary stopping of her car did not relieve appellant who was traveling behind her of taking notice of the movement of her car or of the signals being given by her. She had the superior right to the use of the highway in the turning movement of her car, and it was the duty of the appellant in handling his car to do so in recognition of the superior right of appellees. It was a correct instruction.

(4) Appellant contends for a reversal of the judgments on the ground that the court permitted appellees' attorney to make unwarranted and prejudicial arguments to the jury in closing the case. They say that in closing the case he indulged in ''repeated denunciations of the manner in which appellant conducted the defense and the professional ability and integrity of Dr. Foster, a witness for appellant in the case.''

Nearly two years after the injuries occurred Dr. Foster, at the request of appellants' attorneys, made an examination of appellees, and in the course of the examination Mrs. Violet Wakefield, a technician at the Cooper Clinic in Fort Smith, made a blood test of them, and this test showed a four plus Wasserman as to Mrs. Ramey. Dr. Foster testified that, based on the test, Mrs. Ramey must be afflicted with syphilis. His exact language was that: ''There is only one conclusion that you can draw whenever you get a four plus Wasserman; the conclusion is that the patient must have syphilis.''

On cross-examination the doctor admitted that he did not know and had no basis of knowing whether she had it or not.

He also affirmatively answered the following question: "And isn't it a fact, doctor, that the Wasserman test often may be positive occasionally when a person hasn't even a symptom of syphilis?" Other inconsistencies appear in his testimony.

In his closing argument Mr. Partain criticized the testimony of the doctor on account of the inconsistent statements therein and deplored the fact that such testimony should be resorted to in order to question the virtue and good standing of Mrs. Ramey. · We do not think the argument, under the circumstance, had the effect of prejudicing the rights of appellant.

In view of the fact that the jury found appellant was negligent; that appellees were not guilty of contributory negligence, and that they were warranted in finding that both were seriously and permanently injured, it cannot be said the verdicts were excessive or that the amounts fixed were the result of passion and prejudice induced by the closing argument of Mr. Partain. The court did not abuse his discretion in permitting the arguments to be made.

(5) Appellant finally insists that the verdicts for the sum of $2,000 for Flora Ramey and $1,200 for W. R. Ramey were excessive allowances by the jury.

It must be remembered that the $1,200 verdict in favor of W. R. Ramey included the damage to his car and their doctor's bill, leaving a little over $940 for the injury he received.

The extent of injuries like any other fact is for the jury and when supported by any substantial testimony the verdict should not be set aside or reduced. This court said in the case of *Humphries* v. *Kendall,* 195 Ark. 45, 111 S. W. 2d 492: "It is just as much the province of the jury to determine the extent of one's injuries, and the amount of damages, as it is to determine the question of liability. His injury, pain and suffering are purely questions of fact, and should be left to the jury to determine. What can the judges of this court know about the condition of the appellee or the credibility and weight of the evidence of the witnesses?"

In that case this court quoted with approval from the case of *Coca-Cola Bottling Co.* v. *Cordell,* 189 Ark. 1132, 76 S. W. 2d 307, as follows: "The amount of damages to be awarded for breach of contract, or in actions for tort, is ordinarily a question for the jury; and this is particularly true in actions for personal injuries and other personal torts, especially where a recovery is sought for mental suffering."

Mrs. Ramey testified that she received injuries to her chest, to her head, and that her neck was wrenched, and that her knee was fractured. She testified that the injuries she received were very painful and caused her to give up her profession as a teacher, from which she earned an average of $450 per year. She was sustained in her testimony by that of Dr. John M. Stewart who waited upon her immediately after the injuries and who had attended her as a physician subsequent to that time up until the trial of the case. His testimony was to the effect that she had received permanent injuries.

W. R. Ramey testified that the automobile in which they were riding was damaged in the sum of $150, and that his medical bills for Dr. Stewart for himself and wife were $135; that he had to rent out his farm and employ a man at an expense of about $60 a month to run his trucking business; that the injuries he received were painful, and that he had been unable to stoop down and do any heavy lifting since his injury, and that his injury to his back was permanent and his testimony was confirmed by Dr. Stewart who attended him and had been attending him from the date of the injury until the date of the trial.

It is true that this testimony was disputed by Dr. Foster and Dr. Thompson. In other words, the testimony of the witnesses relative to the injuries received and the extent thereof was in sharp conflict.

We think under all the circumstances that the amount of verdicts rendered by the jury were supported by substantial evidence.

No error appearing, the judgments are affirmed.