HILL *v.* WHITNEY.

4-8512                                                210 S. W. 2d 800

Opinion delivered April 26, 1948.

Rehearing denied May 24, 1948.

*S. Hubert Mayes and Buzbee, Harrison & Wright,* for appellant.

*Virgil D. Willis* and *W. S. Walker,* for appellee.

SMITH, J. Appellants, who are general road construction contractors, entered jointly into a contract with the State Highway Commission to repair and rebuild about seven miles of highway No. 7, south of Harrison, Arkansas. Crooked Creek crosses this segment of the highway near its center. The highway had been slightly relocated at the point where it crossed the creek, and the construction work of grading and graveling had been almost completed on December 7, 1946. A new bridge was to be built adjacent to and east of the old bridge. Appellants had built the road up to the edge of the creek, and on both sides of it. The road came to the edge of the bank of the creek on the south side, but not quite so near on the north side of the creek. The elevation of the rebuilt road at the creek was about five feet higher than the floor of the old bridge. The old bridge remained in service, and as one approached it from the north the traveled way of the highway swung in a well defined turn to the right onto the old bridge. Once across the bridge some twenty or thirty feet, there was a sharp turn to the left, up a short steep grade back to the rebuilt highway.

On the night of December 7, 1946, appellee traveled highway No. 7 south from Harrison, to escort a young lady from a party to her home beyond or south of Crooked

Creek. He testified that as he came into Highway 7, south of Harrison, there were no signs of a closed highway, which was a much traveled road. The slight swing of the road turning south to the bridge was clearly visible and the bridge was crossed and the young lady was taken home without mishap. Soon thereafter he started to return to Harrison, traveling from south to north. There were no slow or other warning signs as he approached the creek from the south. This statement of facts is taken from appellee's testimony, and does not appear to be disputed. The road was apparently straight to the bank of the creek, where there was a perpendicular drop of about twenty feet. Appellee had never traveled that portion of the road before in that direction, but had traveled it from the opposite direction in escorting the young lady home. The view of the creek and the bridge traveling north over it was entirely different from that presented when approaching it from the opposite direction. Just at the edge of the twenty-foot precipice, and not more than six feet from it, the Highway Department had erected a barricade, which, if observed, would have indicated that a sharp turn to the left was required to remain in the road and cross the bridge. Had appellee observed this barricade and made this turn he would have recrossed the bridge as safely as he did in going over it.

The Highway Department had placed a single striped board eight to ten inches wide, and about eight or ten feet long in the center and across the road, not more than six feet from the creek bank. On the board there were alternating, diagonal stripes of red and white making what was called a "scotch light barricade," which could be seen several hundred feet. But this barricade was not placed at the point of turning onto the bridge, but was some twenty or thirty feet north or nearer the precipice. In other words, one would pass the turning off point before reaching the barricade. There were no lights burning and appellee testified that the road beyond the point of turning off to the bridge, and leading into the bank of the creek appeared just like the rest of the road, and

that the only sign of any kind was the single board at the edge of the creek bank.

We think this testimony made a question for the jury as to negligence. Appellants say that they were not negligent as there was no failure to perform any duty on their part, as it was the duty of the Highway Department to safeguard the place of crossing the bridge.

It is true the barricade was erected by the Highway Department and was restored by the Department after it had been knocked down, nevertheless we think it was the duty of appellants both as a matter of contract, and of common law obligation, to warn the traveling public of a hazard which they had created, and to use ordinary care to protect the public from the danger incident to this hazard.

Now it is true that appellants were under no contract to relocate the bridge, but they had built the dump or roadway to the point where the new bridge was to be located, and their contract covered the work on both the north and south side of the bridge. Paragraph No. 7.9 under which appellants were operating reads as follows:

"The Contractor shall provide, erect and maintain all necessary barricades, suitable and sufficient red lights, danger signals and signs and take all necessary precautions for the protection of the work and safety of the public. Highways closed to traffic shall be protected by effective barricades on which shall be placed acceptable warning signs. The Contractor shall provide and maintain acceptable warning and detour signs at all closures and intersections, directing the traffic around the closed portion or portions of the highway, so that the temporary detour route or routes shall be clearly indicated. All barricades and obstructions shall be illuminated at night and all lights shall be kept burning from sunset until sunrise."

The only attempt to comply with this contractual and common law duty was to erect the barricade referred to, but even this was not properly placed, at least the jury might have so found.

The cause was submitted under an instruction reading as follows:

"Gentlemen of the Jury, you are instructed that those in charge of constructing, grading, asphalting or repairing a public highway are bound to see that the public has a reasonable warning of any dangers created by them. So, in this case, if you find that the defendants, acting jointly or either one acting independently, were in charge of constructing, grading, asphalting or repairing the highway and that they left open a dangerous gap or recession therein and that they negligently failed and neglected to place the proper notice or notices, warning or warnings, and that such negligent failure to do so, if you so find, was the proximate cause of the plaintiff's injury and damage to his automobile, if you find that there was injury and damage, or either, you will find for the plaintiff and assess his damages in whatever sum will fairly compensate him, unless you find that his injury and damage, if any, were caused by his own contributory negligence."

It is not questioned that if either appellant is liable both are, and we think the instruction correctly declared the law and that the testimony warranted the court in giving it.

A serious question in the case is whether appellee was guilty of contributory negligence, but we are unable to say as a matter of law that he was. He had never traveled the road before, except while traveling in the opposite direction and the situation at the opposite ends of the bridge was entirely different. He had crossed the bridge in safety and no doubt thought he could safely recross it. There were no lights on the barricade and no signs or markers indicating its presence as one approached it, and appellee testified that he did not see it until he had passed the point in the road where he should have turned to the left to cross the bridge. He testified that he observed the road as he drove along and that he continued in what appeared to be the traveled portion thereof, and that as soon as he saw the barricade he ap-

plied his brakes, but was unable to stop his car until he had run into the barricade which was placed at the edge of the precipice. The jury might well have found that appellee was guilty of contributory negligence, but we are unable to say as a matter of law that it could not find otherwise. *Coca-Cola Bottling Co.* v. *Shipp,* 174 Ark. 130, 297 S. W. 856.

In the case just cited, a car was driven at night, at a speed so great that the driver thereof could not see a parked truck at a distance far enough away to avoid striking it. In reversing the judgment rendered in that case it was held that in the exercise of ordinary care the driver should not have driven his car at a speed so great that he could not stop his car within the range of his vision after discovering an object or obstruction on the highway. In other words, the range of his vision from the use of his lights should have regulated and controlled his speed, so that he could stop his car after discovering the obstruction. The opinion was reversed on rehearing and it was held that inasmuch as there was no light on the truck, reasonable minds might differ as to whether the driver of the car was negligent. So here, in the absence of lights on the barricade, reasonable minds might differ as to the question of appellee's contributory negligence in view of the circumstances herein stated.

Two instructions were asked as to the character of lights with which appellee's car should have been equipped. Both appear to be correct declarations of law as they were based upon and in fact copied from applicable statutes, but neither was given. The court declined to give either upon the ground that both were abstract as there was no testimony that appellee's lights did not comply with the requirements of the law, and the only testimony on that question was to the effect that appellee's lights were in good condition. The court did not err in this respect as there is no duty to give abstract instructions, however clearly and correctly they may declare the law upon an abstract question.

Finally it is insisted that the verdict for $5,000 is so grossly excessive that it may not be permitted to stand. It is certainly generous and abundantly adequate, but it is not so excessive that it may not be permitted to stand. Much testimony was offered as to the damage to the car. According to appellee the car was worth $1,100 before it was precipitated into the creek, and it was so badly torn up that its salvage value was only $150. As to the personal injury, appellee testified that he was pinned under his car and did not know when nor how he was rescued and that he did not regain consciousness until the following day. He had many bruises and lacerations. Two teeth were broken off in his gums, he lost another, and two others were so loosened that he was advised he would lose them. The inside of his cheek was badly cut and required eight stitches. A figure eight was cut in his forehead, the scar of which remains, and the pain in his knee was so great that he could work only for short periods of time. There was opposing testimony to the effect that appellee received medical treatment on only two occasions and that he was confined in his room only a day or two and that except for the damage to his mouth and teeth he was not severely injured. These were all questions for the jury and we are unable to say that the testimony in appellee's favor is not sufficient to support the verdict.

As no error appears the judgment must be affirmed and it is so ordered.