FIDELITY-PHENIX FIRE INSURANCE COMPANY *v.* FRIEDMAN.

Opinion delivered February 15, 1915.

1. CONTINUANCES—ABSENCE OF WITNESSES—DISCRETION OF COURT.—In an action to recover on certain policies of fire insurance, an architect made certain estimates of the damage sustained by the building. At the time of trial he was prevented from attending, by sickness. *Held*, the court did not abuse its discretion in refusing to grant a continuance, where the absent witnesses' estimates were read to the jury, and when other architects testified in behalf of the defendant, as to the damage.

2. TRIAL—CONSOLIDATION OF CAUSES OF ACTION—SELECTION OF JURY—NUMBER OF PEREMPTORY CHALLENGES.—Where two or more actions are consolidated under the act of May 11, 1905, the act requires that the parties shall proceed to trial as one action, and the procedure shall be governed by the rules applicable to one action; and where the cases are so treated the plaintiffs and the defendants are only entitled to three peremptory challenges each, under Kirby's Digest, § 4536.

3. FIRE INSURANCE—NOTICE OF LOSS.—The failure of the insured to give to several fire insurance companies notice of a fire loss, will not defeat an action against the companies, when, shortly after the fire, adjusters representing all the companies, met and investigated the fire with a view to settling the loss.

4. FIRE INSURANCE—PROOF OF LOSS—BINDING EFFECT.—Statements in a proof of loss after a fire are not binding upon the insured, so as to preclude his recovery of the real amount of the loss, unless there has been a violation of some provision of the policy; the proof of loss is merely an estimate of the insured, and where a settlement is not made upon it, it is not conclusive of the amount due by the insurance company to the insured, but the insured may recover in a suit upon the policy the amount established by the evidence as the true amount of his loss.

5. WITNESSES—HUSBAND AS WITNESS—WIFE'S AGENT.—In an action in which a wife is a party plaintiff, to recover on certain policies of fire insurance, the husband may testify as to things done by him while acting as the duly appointed agent of his wife, and any objection to his testimony must be made specifically.

6. NEW TRIAL—NEWLY DISCOVERED EVIDENCE—DILIGENCE.—It is proper to refuse to grant a new trial on the ground of newly discovered evidence, where the basis of defendant's motion was evidence tending to rebut a fact established by plaintiff's proof, and which, by the exercise of ordinary diligence, could have been offered at the trial.

7. APPEAL AND ERROR—VERDICT—SUFFICIENCY OF EVIDENCE.—Where there is substantial evidence to support the verdict, the cause will not be reversed on appeal on the ground of insufficiency of the evidence.

8. INSURANCE—FIRE INSURANCE—PROPORTIONATE SHARE OF LOSS—SEPA-
RATE JUDGMENTS.—Plaintiff held fire insurance policies in eight
companies. In an action to recover for a fire loss, *held*, it was
proper for the court to render separate judgments against each
company for a proportionate amount of the total loss, based on the
proportionate amount of each policy to the whole.

9. INSURANCE—FIRE INSURANCE—JUDGMENT—PENALTY AND ATTORNEYS'
FEES.—Plaintiff sued defendants on certain policies of fire insurance
after a loss. A verdict was rendered for the full amount sued for,
but the court required plaintiff to enter a remittitur of $2,500,
which **the plaintiff did.** *Held*, since the ultimate amount for which
plaintiff obtained judgment, was less than the amount sued for,
it was improper to assess attorneys' fees or the penalty provided
by the statute.

Appeal from Sebastian Circuit Court, Fort Smith
District; *Daniel Hon*, Judge; modified and affirmed.

STATEMENT BY THE COURT.

Leah Friedman was the owner of a four-story brick
building in the city of Fort Smith, Arkansas, and in Feb-
ruary, 1914, the building was damaged and partially de-
stroyed by fire. Mrs. Friedman had policies in eight in-
surance companies, including the Fidelity-Phenix Insur-
ance Company.

The New York Life Insurance Company was the
holder of a mortgage upon the property and was pro-
tected from loss by the policies of insurance. After the
fire occurred the adjusters for all the different companies
visited Fort Smith and entered into negotiations with the
plaintiffs for the adjustment of the losses. The parties
failed to agree and the insurance companies refused to
make payment under their policies. Mrs. Friedman and
the New York Life Insurance Company then entered sep-
arate suits against the insurance companies to recover the
amount alleged to be due them under the policies.

On motion of the plaintiffs and over the objection of
the defendants the causes were consolidated and tried to-
gether. Upon the trial of the case, Lewis Friedman was
offered as a witness on behalf of the plaintiffs and the
defendants objected to his testifying on the ground that
he was the husband of the plaintiff, Leah Friedman.
Their objection was overruled and Lewis Friedman was

permitted to testify.   He testified that his wife consti-
tuted him her agent to notify the defendants of the loss
occasioned by the fire and to adjust the same; that pur-
suant to this authority he notified the agents of some of
the insurance companies of the loss; that two adjusters,
representing all of the insurance companies, came to Fort
Smith and went with him to examine the building for the
purpose of adjusting the loss; that at their suggestion
an architect was employed to make an estimate of the
loss but after some negotiations on the subject they were
unable to agree as to the amount of the loss and the in-
surance companies refused payment, and that proofs of
loss were made out by the plaintiffs and presented or
mailed to the defendants within the time and in the man-
ner provided for in the policies.   The witness also de-
scribed the part of the building burned as it appeared to
him at the time he made the examination with the adjust-
ers of the insurance companies.   He further testified that
a steel girder ran through the entire length of the build-
ing, that this girder was about the center of the building
and that the front and rear walls of the building where
this girder entered them were out of plumb but that he
did not know from what cause.

  The plaintiffs employed architects and contractors to
examine the building and make a detailed estimate of the
damage done to the building and the cost of placing it in
the same condition it was before the fire.   The total
amount of the damage from the fire was variously esti-
mated by the witnesses at from seventeen to more than
twenty thousand dollars.

  Architects and contractors employed by the defend-
ants also made detailed estimates of the amount of dam-
age occasioned to the building by the fire and the cost of
placing the building in the same condition as before the
fire, and their estimates placed the damages at not exceed-
ing eight thousand dollars.

  The jury returned a verdict in favor of the plaintiffs
in the sum of $17,473.04, which was the amount sued for.

Upon the hearing of the motion for a new trial filed by the defendants the court announced that it would grant the same unless the plaintiffs would enter a remittitur of $2,500. The plaintiffs entered the remittitur as required by the court and the court overruled the motion for a new trial. The court then, on motion of the plaintiffs, allowed an attorney's fee of $1,000 and imposed a penalty of 12 per cent under the statute. The court entered judgment against each of the insurance companies for the proportionate amount due by each of them under the terms of their policies. The defendants have appealed. Other testimony will be referred to in the opinion.

*Ira. D. Oglesby,* for appellant.

1. It was error to refuse to postpone the case until the witness Klingensmith was able to testify.

2. Each defendant was entitled to separate challenges to jurors. 90 Ark. 484; 145 U. S. 285; Kirby's Dig., § 4536; 83 Ark. 290; 37 Mich. 490.

3. It was error to admit testimony as to damage to and by steel girders. No mention of this is made in the items of the proofs of loss.

4. It was error to refuse defendant's application to compel plaintiffs to permit the examination of Jennings and the mechanics under him to be completed.

5. The husband's testimony was inadmissible in behalf of the wife. Const. Ark.

6. Immediate notice of loss was not given. 72 Ark. 484.

7. The court had no authority under the verdict to enter separate judgments against the respective defendants. 83 Ark. 255; 90 *Id.* 482; 145 U. S. 285.

8. It was error to assess the attorney's fee and the penalty. 92 Ark. 378; 93 *Id.* 84.

9. A recovery could only be had for the items specified in the proof of loss.

*Ben Cravens,* for appellees.

1. The testimony of Klingensmith was cumulative merely. Motions for continuance are within the sound discretion of the court. 80. Ark. 376; 104 *Id.* 606; 93 *Id.* 346; 95 *Id.* 291.

2. After consolidation there was only one cause of action and only three peremptory challenges were allowable. 77 Ark. 74; 83 *Id.* 290; 86 *Id.* 137; 93 *Id.* 140; 90 *Id.* 484; 83 *Id.* 255; 107 Fed. 842; 148 *Id.* 824; 104 *Id.* 317.

3. Proofs of loss are primarily intended to secure an adjustment between the insured and the company, and the statements as to the amount and circumstances of the loss are not binding on the insured so as to preclude his recovery for the real amount of the loss. 19 Cyc. 854; 126 Ill. 329; 9 Am. St. Rep. 602; 106 Pa. St. 28; 24 Hun, 58; 55 N. Y. 222; 52 Ill. 464.

4. After the damages had been assessed and the trial completed the court had no power to compel appellees to permit an examination by Jennings.

5. Friedman was a competent witness as agent of his wife. In any event he was competent, as the New York Life Insurance Company was a plaintiff to whom the loss was payable. 62 Ark. 26.

6. Appellants had immediate notice of the loss. The burden is on the insurer to establish a forfeiture under the terms of the policy. 85 Ark. 33. No instruction was asked by appellants upon the question of immediate notice and this question was waived.

7. Defendants were each liable for their proportionate share of the entire loss, and it was not error for the court to prorate the liability. A separate verdict was not necessary as no prejudice resulted.

8. Act No. 115, Acts 1905, 307-8, authorizes an assessment of attorney's fee and penalty. 86 Ark. 115; 92 *Id.* 378. In the latter case, the amount recoverable was fixed by the policy, while in this case the amount recoverable was the amount of damage not in excess of the aggregate amount of the policies. Plaintiffs only sued for the loss or damage actually suffered and recovered that sum.

9. A recovery is not limited to the items stated in the proofs of loss. 126 Ill. 329; 19 Cyc. 854; 126 Ill. 329; 9 Am. St. Rep. 602; 106 Pa. St. 28; 24 Hun, 58; 55 N. Y. 193; 52 Ill. 464.

Hart, J., (after stating the facts). (1) It is first insisted by counsel for the defendant that the court erred in refusing to continue the case upon their motion. The record discloses that about ten days before the cases were set for trial Klingensmith, an architect of the city of Fort Smith, was employed by the defendants to make an examination of the damaged building and to prepare plans and specifications of what was necessary to restore it to its original condition, with an estimated cost thereof. He performed this work, but when the case was called for trial, or a day before the cases were set for trial, he became suddenly ill and was not able to be present in court as a witness. Upon the hearing of the motion the plaintiffs introduced testimony tending to show that another architect could take the estimates and specifications prepared by Klingensmith and explain them to the jury. The court denied the motion for a continuance, and the specifications and estimates prepared by Klingensmith were read to the jury as his deposition, no objection being made by the plaintiffs. Under these circumstances, we do not think the court abused its discretion in refusing to continue the case on account of the illness of Klingensmith. Moreover, the record shows that the trial of the case continued for several days, that other architects for the defendants examined the building and testified for them in the case. Besides this, the record shows that they employed several contractors who made an examination of the building and testified in detail as to the parts damaged and the cost of restoring the building to its condition as it was before the fire.

(2) After the cases were consolidated and during the formation of the jury, the eight defendants contended that they were each entitled to three peremptory challenges under section 4536 of Kirby's Digest, and assign as error the action of the court in refusing them the same.

In support of their contention they cite the case of *Mutual Life Ins. Co.* v. *Hillmon,* 145 U. S. 285. It must be conceded that that decision sustains the contention of the defendants, but we do not agree with the reasoning of the court in that case. The act of May 11, 1905, under which the cases were consolidated, provides, in effect, that when causes of action of like nature or relative to the same question are pending before any of the circuit courts of this State, the court may make such orders and rules concerning the proceedings therein as may be conformable to the uses of courts for avoiding unnecessary costs and delay in the administration of justice and may consolidate said causes when it appears reasonable to do so.

In the case of the *St. Louis, I. M. & S. Ry. Co.* v. *Raines,* 90 Ark. 482, and other cases cited therein, we held that the object of the act in question was to save a repetition of evidence and an unnecessary consumption of time and costs in actions depending upon the same or substantially the same evidence, or arising out of the same transaction.

It is evident that if the contention now made by the defendants should be sustained by the court that one of the principal objects of the statute would be defeated. If the defendants were each entitled to three peremptory challenges then it follows as a matter of course that the plaintiffs would be entitled to three peremptory challenges against each of the defendants. The result would be an unnecessary consumption of time in the formation of the jury. New panels would have to be summoned because it is obvious that the regular panels would be exhausted before the jury could be obtained if the plaintiffs and defendants were allowed three peremptory challenges each, as contended for by counsel for the defendants.

It may be true that in some cases for special reasons some of the defendants might want to challenge certain jurors which the other defendants might want retained, and *vice versa;* but such matters as these would be properly urged as reasons why the cases should not be con-

solidated, or as reasons why the court abused its discretion in consolidating the cases.

We are of the opinion that the act of May 11, 1905, contemplates that when actions are consolidated under it, they shall proceed to trial as one action, and that the procedure shall be governed by the rules applicable to one action. It follows that if the case is to be treated as one action, the plaintiffs and defendants are only entitled to three peremptory challenges each, under section 4536 of Kirby's Digest.

In the case before us the record does not show that the court abused its discretion in consolidating the actions. The policies issued by the insurance companies were the standard forms of insurance policies and contained in all essential respects the same provisions. The same fire occasioned the loss under all of the policies and the defenses to be made by the defendants were substantially the same. The companies employed the same attorneys and the record does not show that the defendants were in any way prejudiced by the consolidation of the causes. Their only claim was that each of them had the right to exercise three peremptory challenges, and as we have already seen, we think the act of May 11, 1905, contemplates that the actions when consolidated, should proceed to trial as one action, and be governed by the statutes relative to the trial of a single action.

(3) The policies sued upon contain the provision that the insured shall give immediate notice in writing of any loss. This notice was not given to all of the companies and error is assigned on that account. The record shows that the adjusters for all of the companies came to Fort Smith a short time after the fire occurred for the purpose of adjusting the losses between the plaintiffs and defendants. The object to be effected by the provision for giving immediate notice of any loss to the company is that the company may investigate the extent and character of the loss and the circumstances surrounding it, and also that it may take such steps as are necessary to protect the property from further loss. This was one of the objects of the adjusters in visiting Fort Smith after the

fire occurred.  The companies had notice of the loss and it would have been a vain and useless thing to have required the plaintiffs to give them notice.

(4)  In making out their proofs of loss, the plaintiffs omitted therefrom the damages which were suffered by the front and rear walls of the building being out of plumb.  This item of loss being omitted from the proofs of loss, it is contended by counsel for the defendants that the court erred in permitting proof to be introduced to the jury on that question.  We do not agree with them in this contention.  Proofs of loss are primarily intended for securing an adjustment between the insured and the insurer.  The statements as to the amount and circumstances of the loss will not be binding on the insured so as to preclude his recovery of the real amount of the loss unless there has been a violation of some provision of the policy.  19 Cyc. 854.

It will be seen that the contention of counsel for the defendants is that, as a matter of law, the plaintiffs are bound by their proofs of loss as to the amount of the loss suffered by them.  It is generally held that proofs of loss will not estop a plaintiff, but that in a suit upon the policy he may give evidence of the actual amount of his loss and recover accordingly.  The reason is that proofs of loss are required for the purpose of furnishing the insurer with information upon which to determine the amount of his liability and to serve as a basis for the adjustment of the loss with the insured.  It is merely an estimate of the party, and where a settlement is not made upon it, it is not conclusive of the amount due by the insurance company to the insured, but the insured may recover in a suit upon the policy the amount established by the evidence as the true amount of his loss.

(5)  It is claimed by counsel for the defendants that the court erred in permitting Lewis Friedman to testify because he was the husband of one of the plaintiffs.  There was no error in this for two reasons.  One is that the life insurance company which had a mortgage on the property insured was a party plaintiff to the action.  The husband of the plaintiff, Mrs. Friedman, was a competent

witness in behalf of the insurance company, and the record does not show that counsel for the defendants asked that the testimony be limited to the recovery sought by the life insurance company.

The fourth subdivision of section 3095 of Kirby's Digest provides that a husband or wife may be allowed to testify for the other in regard to any business transacted by the one for the other in the capacity of agent. The record shows that when the fire occurred, the plaintiff, Leah Friedman, constituted her husband her agent in all matters pertaining to the adjustment of the loss between her and the fire insurance companies. Therefore, under the statute the husband was a competent witness to testify as to all matters relating to the agency. It was clearly competent for him to state that he met the adjusters and went with them to the scene of the fire, and made an examination of the building and of other matters pertaining to a settlement of the loss.

It is true that the record shows that the husband also testified in regard to a steel girder running through the length of the building near its center which is alleged to have caused the damage to the front and rear walls of the building. We need not decide whether this was a matter pertaining to the agency or not, for no objection was made to the testimony of the witness in this regard. The objection made was when he took the stand as a witness, and was a general objection that he was incompetent to testify in the case. As we have already seen, he was competent to testify as to matters relating to his agency, and if he testified as to matters not within the scope of his agency, the defendants should have then made a specific objection as to this testimony. Not having done so, under the settled rules of this court, they are not now in an attitude to complain.

(6)    After the completion of the trial and after the jury returned its verdict and judgment had been entered upon it, the defendant sent an architect to the building who attempted to uncover the steel girder throughout the whole length of the building. Before he had proceeded very far in this work, he was stopped by the plaintiffs.

It is now the contention of the defendants that if they had been permitted to expose the girder throughout the length of the building the fact would have been disclosed that the girder had not become heated and expanded so as to cause the wall in the front and rear of the building to become out of plumb, and the affidavit of the witness was introduced tending to show that the walls did not become out of plumb because of the expansion of the girder by the fire. We do not think the court abused its discretion in refusing to allow a new trial on this account. The trial lasted three or four days, and the burned building was situated in the same city in which the trial was had. The fact that the girder caused the front and rear walls of the building to become out of plumb was established by the testimony of plaintiffs and the defendants had ample time to make the examination during the course of the trial.

Besides this, some of the witnesses for the plaintiffs testified that the fire occurred on the coldest night of the winter, and that the next morning the water which had been thrown upon the building in an effort to extinguish the fire had become frozen and that the ice thus formed tended to force the walls out of plumb.

Still another witness for the plaintiffs testified that the action of the fire itself on the building might have caused the walls to crack and to become out of plumb. And in any event the defendants might have caused the examination to be made during the progress of the trial, and are not in an attitude now to complain.

(7) We have not been urged to reverse the case because the evidence is not sufficient to warrant the verdict, and for that reason we have not deemed it necessary to fully abstract and set out in detail the evidence pertaining to the amount of the damages suffered by the plaintiffs. It is not our province to pass upon the credibility of the witnesses or the weight to be given their testimony. If the verdict has any substantial evidence to support it, it is our duty to uphold it, and we are of the opinion that there was sufficient evidence to support the verdict.

(8) The jury returned a verdict for the whole amount of damages claimed by the plaintiffs, and the court ren-

dered judgment against each of the defendants for the proportionate amount of the loss due by it under the terms of its policy. Error is assigned by counsel for the defendant on this account. There was no error in the action of the court. The policies themselves fixed the proportionate amount that should be paid by each of the insurance companies in case of loss, and the action of the court in rendering separate judgments against each of the companies was the result of a calculation provided for in the policies themselves, and no possible prejudice could have resulted to the defendants therefrom.

(9) It is finally insisted by counsel for the defendants that the court erred in allowing attorneys' fees of $1,000 and a penalty of 12 per cent under the statute, and in this contention we think they are correct. It is true the verdict of the jury was for the amount sued for by the plaintiffs, but the court required them to enter a remittitur of $2,500 as a prerequisite to overruling the motion for a new trial filed by the defendants. The ultimate amount which the plaintiffs recovered was the amount for which the court rendered judgment, and this was less than the amount sued for. Therefore, we do not think the court should have assessed the attorney's fee against the defendants or the penalty under the statute. See *Pacific Mutual Life Insurance Co.* v. *Carter*, 92 Ark. 378; *Industrial Mutual Indemnity Co.* v. *Armstrong*, 93 Ark. 84.

It follows that the judgment of the court in this respect will be reversed and the amount of the attorney's fee and the penalty will not be allowed as a part of the judgment.

The judgment as to the amount due to the plaintiffs under the policies as damages will be affirmed.