**WEEKS et al. v. BARECO OIL CO. et al.**

**No. 7603.**

Circuit Court of Appeals, Seventh Circuit. Dec. 22, 1941.

---

Karl Edwin Seyfarth and Benton Atwood, both of Chicago, Ill., and Ernest A. Michels, of Minneapolis, Minn., for appellants.

David T. Searls, of Chicago, Ill., S. A. L. Morgan, of Amarillo, Tex., John E. Green, Jr., and Archie D. Gray, both of Houston, Tex., and Samuel Topliff, Ralph Horween, Hubert C. Merrick, Buell F. Jones, Weymouth Kirkland, John J. O'Shaughnessy, and James B. O'Shaughnessy, all of Chicago, Ill., Gene M. Woodfin, of Houston, Tex., S. A. Mitchell and R. D. Shewmaker, both of St. Louis, H. H. Thomas and L. E. Isaksen, both of Madison, Wis., R. L. Wagner, of Chicago, Ill., George W. Ray, Jr., of New York City, and David Fisher, of Chicago, Ill., (Vinson, Elkins, Weems & Francis, of Houston, Tex., Thompson, Mitchell, Thompson & Young, of St. Louis, Mo., Thomas, Orr & Isaksen, of Madison, Wis., Morgan, Culton, Morgan & Britain, of Amarillo, Tex., and Kirkland, Fleming, Green, Martin & Ellis, of Chicago, Ill., of counsel), for appellees.

Before EVANS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

This is a civil, statutory[1] action to recover treble damages for injuries caused by an unlawful combination violative of the Anti-Trust Laws,[2] and is an aftermath of a criminal prosecution therefor.[3]

Plaintiffs are two Illinois jobbers of gasoline. They sue on their own behalf, and as representatives of a class of approximately 900 Illinois jobbers. The nineteen defendants are oil companies which were charged by indictments, with violating the Sherman Act.

The gist of the alleged conspiracy and injury is that defendants, in 1934, 1935, and 1936, lessened the jobbers' margin of profit, from 7½¢ to 5¢ per gallon. This illegal object was achieved by defendants' combining to raise and fix the spot tank car market price of gasoline, which price was, in the contracts between the respective plaintiffs and defendants, made the basis of the jobbers' cost price.

Motions to strike, and to quash, and to dismiss, were made by the defendants, and the District Court dismissed the complaint and dissolved the temporary restraining order which it had theretofore entered enjoining other jobbers in Illinois from instituting similar suits. The bases for the dismissal order were: (1) the plaintiffs do not constitute a "class" within Rule 23, of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, because they do not seek a "common relief." (2) The plaintiffs do not insure the adequate representation of all members of the class. (3) The plaintiffs have no cause of action in equity.

Plaintiff Weeks, a former jobber at Wilmington, Illinois, claims specific damages to himself of $11,937.30 (to be trebled) incurred in the sale of 477,492 gallons in said three years. Plaintiff Sterling Corporation, a jobber at Chicago, handled 2,515,197 gallons in the same period, with a damage of $62,879.92 (untrebled). The 900 jobbers are alleged to have suffered $37,500,000 damages (2½¢ on 1,500,000,000 gallons).[4]

---

[1] 15 U.S.C.A. § 15, which provides: "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

[2] 15 U.S.C.A. § 1 et seq.

[3] United States v. Standard Oil Co., D. C., 23 F.Supp. 937.

[4] The bill was brought by plaintiffs "on behalf of themselves and all other persons who were jobbers of gasoline in * * * Illinois * * * during 1934, 1935, and 1936, to enforce the joint and several causes of action under the Anti-Trust laws." Plaintiffs' bill sought a disclosure, by the defendants, of the names of the Illinois jobbers; a determination by the court of the precise extent to which the jobbers' margin was narrowed

The first sharply controverted issue is the propriety of this class action, instituted by two jobbers on behalf of nine hundred others.

The affidavits of the various defendants, supporting their motions to dismiss, disclose: (1) Several defendants are not residents of the district where the suit was brought. These defendants argue that, as to them, service should be quashed. (2) Several of the defendants were acquitted in the so-called "Madison No. 1" criminal trial, which is particularly described in the complaint, and some defendants pleaded *nolo contendere,* before any evidence as to them was presented. Upon these facts the contention is made that they should not be tried with the other defendants in this civil suit. (3) Some Illinois jobbers held contracts for the purchase of gas from a *single* defendant, and some of such contracts permitted the jobbers to purchase at will from other sources. The contracts vary as to the standard provided for determination of cost price to the jobber, and only a few of them provided the measure asserted in the complaint.

The District Court dismissed the suit for these reasons: (a) The persons whom plaintiffs seek to represent do not properly constitute a "class" as no "common relief" is sought. (b) This action by plaintiffs does not insure an adequate representation of all members of the alleged class. (c) This is not a proper equitable proceeding.

(a) *Propriety of a Class Suit to Enforce a Civil Cause of Action for Conspiracy.* The Federal Rules of Civil Procedure specifically authorize class actions. Rule 23 reads:

"If persons constituting a class are *so numerous* as to make it impracticable to bring them all before the court, *such of them, one or more, as will fairly insure the adequate representation of all* may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is * * * (3) several, and *there is a common question of law or fact affecting the several rights and a common relief is sought.*"

■ Strong and persuasive reasons favor the extension of the class suit theory to include a suit to vindicate the rights of several persons contemporaneously injured by a criminal conspiracy effectuated by the same conspirators and directed against a specific class of individuals. Among such reasons, are

(1) The statutory tort, incident to a criminal conspiracy, is a single thing, a single wrong, and though a compound of many acts and persons, it has a singleness of object, an integral core.

(2) The illegal conspiracy gives rise to one statutory cause of action for damages incident to the violation of law. Many persons may have the identical cause of action, arising from the same wrong, but varying in scope of damage to each, depending upon the effect of the illegal act upon the individual.

(3) Rule 23, by its broad language, permits a class suit in cases like the one before us, provided other necessary facts essential to class suits are present. In the instant action, we have a class composed of so many claimants that it is impracticable to join them as parties; there is a common question of fact—the existence of an alleged conspiracy to injure the jobbers. The same relief, namely damages, is sought, although the amount of the recovery varies.

■ The history of class suit litigation, its development over a century of growth, the origin and status of present Rule 23 of the Federal Rules of Civil Procedure, are all persuasive of the necessity of a liberal construction of this Rule 23, and its application to this class of litigation. It should be construed to permit a class suit where several persons jointly act to the injury of many persons so numerous that their voluntarily, unanimously joining in a suit is concededly improbable and impracticable. Under such circumstances, injured parties who are so minded, may present the grievance to a court on behalf of all, and the remaining members of the class may join as they see fit. Authorities are cited below.[5]

---

as a result of the conspiracy; a presentation to the court by all jobbers of their claims; the payment into a fund held by a receiver, by all defendants of the amounts (trebled) they are responsible for, and a proper distribution of such fund to said jobbers, and an injunction against the institution by any jobber of an independent suit.

[5] Moore in his treatise on Federal Practice Under the New Rules, gives an ex-

There are, it seems, more than the usual or ordinary reasons for permitting a class action here.

The difficulties inherent in the obtaining and presentation of proof by individual small jobbers, as contrasted by

cellent discussion of the "Spurious Class Suit" (§ 23.04, page 2241.) He says:

"This is a permissive joinder device. The presence of numerous persons interested in a common question of law or fact warrants its use by persons desiring to clean up a litigious situation. Assume that a railroad negligently sets fire to property, and widespread damage to many property owners ensues. Here there is a question of law or fact common to many persons. A, B, and C bring an action on behalf of themselves, and all others similarly situated, against the railroad. * * * The judgment would bind A, B, and C, and privies, the railroad, and all who had intervened, but would not bind others beyond the principle of *stare decisis*, which operates as to all judgments."

"Cases can be found which deny the propriety of this type of suit, which allow it only because of special circumstances, and which allow it as a matter of right. Cases which fall into the first two groups are usually those decided at an early date, while those falling in the last group are recent cases. This is to be expected, because, as we have seen, the birth and development of the class action has been inextricably bound up with joinder of parties, and permissive joinder of parties based on a common question of law or fact is a modern development. It is, therefore, natural that the spurious class action should be a modern development, and that as the Federal Rules provide for permissive joinder of parties they should also provide for the counterpart, the class action based on a common question of law or fact. If this is borne in mind, cases which have denied the propriety of this type of class action can now be regarded as historical material on the problem of joinder, but no longer as authority against this type of class action, since the joinder of parties now embraces joinder based upon a common question of law or fact."

A practically parallel case is that of the District Court decision in Alabama Independent Service Ass'n v. Shell Petroleum Corp., 28 F.Supp. 386, 390 (not appealed to C. C. A.). There the court said:

"We may add that the remaining plaintiffs, as operators of gasoline service stations, may properly remain as plaintiffs, and may sue on behalf of all of the similarly situated parties described in the complaint. See Rule 23 (a) (3) * * *. However, for the recovery of damages, each member of the class must intervene to assert and prove such damages to him-

self. * * * There seems no question but that the plaintiffs are properly joined here since they do claim a right to relief, severally, from the same transactions and many of the same questions of both law and fact will arise."

The Third Circuit said in Independence Shares Corp. v. Deckert, 108 F.2d 51, 55, reversed in the Supreme Court on other grounds, December 9, 1940, 311 U. S. 282, 61 S.Ct. 229, 85 L.Ed. 189:

"In conclusion we state that the appellants contend that Section 12 (2) of the Act [Securities Act] gives the appellees no right to maintain their suit as a class action. We are unable to agree with this contention. The suit at bar is of the type denominated a 'spurious' class suit and may be maintained under Rule 23 (a) (3) of the Federal Rules of Civil Procedure. * * * In the case at bar numerous persons are interested in common questions of law or fact affecting the several rights of many individuals. Common relief may be sought despite the fact that individuals may recover separate judgments different in amounts. It should be noted that the misrepresentations set forth by the bill are alleged to be common to the sales made by the agents of the appellant company * * * to the appellees and the other subscribers upon whose behalf the suit was instituted."

This case has again been presented to the Court of Appeals, and in a decision announced November 19, 1941, 123 F.2d 979, the Court held that the action could not be maintained upon the record before the Court for the reason "that it is impossible to conclude that the plaintiffs are fairly representative of the class of planholders."

In Railway Express Agency v. Jones, 7 Cir., 106 F.2d 341, 343, this court said:

"While defendant's contention that a class suit may not be maintained where each claimant of the class asserts a separate claim based on individual and separate fraudulent representations, is sound, we are bound, at this stage of the proceedings, by the allegations of the complaint. It is possible, accepting the allegations of the complaint, that there exists a case of joint action upon identical fraud with the resulting total damage exceeding $3,000. It is only after proof has been received on this issue * * * that the court may * * * deny plaintiff's right to sue for all; that is, to maintain a class suit."

able, financially powerful companies, must be considered and appreciated. If there be a single conspiracy between all the co-defendants here charged, and said single conspiracy were directed at *all* jobbers, a single trial would obviously expedite and simplify the achievement of justice. Each jobber should not be put to the tremendous task of ferreting out the evidence indicative of the existence of the alleged conspiracy. In all probability, the individual jobber could not do so. But, through a joinder of forces they might, between them, uncover such evidence as may lead to the proof of the conspiracy, if there be such proof. Nor is the financial aspect to be overlooked—that is, the plaintiffs' and defendants' relative financial ability. The relative financial interest in the outcome of this litigation is such, that greater parity of ability is obtained by a joinder of plaintiffs.

■ To permit the defendants to contest liability with each claimant in a single, separate suit, would, in many cases give defendants an advantage which would be almost equivalent to closing the door of justice to all small claimants. This is what we think the class suit practice was to prevent. Like many another practice, necessity was its mother. Its correct limitations must be ascertained by the experiences which brought it into existence.

Defendants would probably not suffer from such a joinder assuming they must stand suit. In fact, it should be beneficial to them—they have but one suit to meet, instead of innumerable ones. At least it would be advantageous if trial be had, instead of a contest where the defense is to avoid trial. If the defense is to create barriers, and to make litigation expensive, so as to *avoid* trial, the opposition by defendants to a single trial can better be understood and appreciated. Such a position does not appeal to a chancellor, who wants to know the truth, and to fix liabilities on the basis of the true facts.

(4) The decision in United Mine Workers v. Coronado Co., 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975, 27 A.L.R. 762, throws light on the question, and is rather pertinent to the instant question, *i. e.*, the joinder of claimants in a single, statutory suit for injuries sustained through a conspiracy. There it was held that "in view of the Conformity Act [28 U.S.C.A. § 724] and the law of Arkansas respecting consolidation of causes [analogous to class suits] the District Court did not abuse its discretion in permitting several allied corporations to be joined as plaintiffs in an action prosecuted by their receiver to recover triple damages under § 7 of the Sherman Act for the destruction of their properties and business committed in an alleged conspiracy to restrain interstate commerce."

The defendants there charged: "There was a misjoinder of plaintiffs and of their causes of action, the complaint failing to show *any community of interest in the plaintiffs or any joint cause of action.* To entitle plaintiffs to join in an action for damages they must have a joint legal interest in the property affected and in the damages sought to be recovered." The court said:

"First. It does not seem to us that there was a misjoinder of parties under the procedure as authorized in Arkansas. In that state the law provides that when causes of action of a like nature, or relative to the same question, are pending before any of its * * * courts, the court may make such orders and rules regulating proceedings therein as may be conformable to the usages of courts for avoiding unnecessary costs or delay in the administration of justice, and may consolidate said causes when it appears reasonable to do so. In Southern Anthracite Coal Co. v. Bowen, 93 Ark. 140, 124 S.W. 1048, the court consolidated, over objection by defendant, two suits by two workmen who had been injured in the same accident, and the Supreme Court approved of this action. In Fidelity-[Phenix Fire] Ins. Co. v. Friedman, 117 Ark. 71, 174 S.W. 215, it was held that actions by an injured person and by a mortgagee against eight insurance companies on eight different fire insurance policies could be consolidated against the objection by defendants, and they were tried together. * * * *It is a case for the exercise of reasonable discretion by the trial court.* We cannot say that that discretion was abused in this case. All the companies for which the plaintiffs herein are receivers were united together in interest and largely under the control of one of the companies. The active manager of all of them for years was Franklin Bache. He was the first receiver, and as such the plaintiff. There was no need for a division in the verdict of damages found, because the union of interest between the plaintiffs involved no difficulty in the distribution

among them of the amount found. The judgment is *res adjudicata* as to all the plaintiffs, and we can find no substantial reason for disturbing it on this ground. * * * On the contrary, an examination of the evidence shows that all the witnesses for the defendants treated the plaintiffs as a unit. They were so regarded in business and in the neighborhood where the mines were."

■ There is no question but that the amount recoverable by each possible claimant is different, both as to basic figure of percentage of profit denied them, and also as to amount of gasoline sold. This factor is not decisive of the propriety of a class suit. It does, however, bear on the advisability of such a suit—on the wisdom of the exercise of the District Court's discretion.

The case of Deckert v. Independence Corp., 311 U.S. 282, 61 S.Ct. 229, 233, 85 L.Ed. 189, presented other questions which necessitated reversal, but it can hardly be overlooked, on this question of the right to maintain a class suit. The court disposed of the motion to dismiss, because it failed to state any cause of action and because the District Court lacked jurisdiction, in a single sentence: "We hold that these motions were correctly denied."

The case of Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. .115, 85 L.Ed. 22, 132 A.L.R. 741, is another case to be studied for it furnishes some, though small, inferential support for plaintiffs' position. In other words, there can be a class suit for a group, notwithstanding some members, whose interest conflicts with that of the class for whom suit is brought, for those with conflicting interests are not bound by the judgment in the class action. This is on the theory that they are not members of the class. The class suit, although binding on all members for whom the suitors may speak, is not binding upon those whose interests are at variance with the position taken by the true members of the class.

■ In other words, under the Hansberry opinion, the doctrine of *res judicata* does not bind those who assert a position adverse to that stated by those who bring the class suit. But what of its effect on those who are of the group whose interests are in accord with those who bring the suit? They are bound.

In the instant case, the gist of the action is the alleged damage from the alleged wrongful acts of the defendants. Defend-

ants' action, in violation of the law, is the common issue. True, damages must be shown, but the "common question of law or fact" is the existence or absence of defendants' wrongful conduct,—the unlawful combination or conspiracy to prevent competition and raise prices. Damages are an essential fact of the cause of action, but the heart of the controversy is the unlawful combination. Damages, as such, flow as a result, although the amount may vary in each case and depend largely upon the volume of business done by the victims of the conspiracy.

(b) *Do plaintiffs fairly insure the adequate representation of all who have been damaged by defendants' unlawful combination?*

■ Whether plaintiffs meet the requirements of Rule 23 is the precise question we must answer. This rule calls for "one or more" plaintiffs. In further defining the phrase "one or more," the Supreme Court, by this rule, said: "as will fairly insure the adequate representation of all." This qualifying phrase deals not alone with the number of plaintiffs. It calls for plaintiffs who can *insure the adequate representation* of all the others. The application of the rule to each case necessitates a study of the factual situation which is at the bottom of the asserted liability of defendants.

In the instant case we have two plaintiffs suing for and on behalf of nine hundred. This, on its face, seems small, but nevertheless a suit may be welcomed and supported, in fact, by a large percentage of said nine hundred, although many would not care to start separate, individual suits. Others, because of fear of costs and any other good reason, may not favor the class suit. May it be said that the two, therefore, did insure an adequate representation of the others?

An examination of the decisions leads to the conclusion that some courts have recognized that great disparity between the number actually suing and the number in the class, is of some importance. We again quote from the authorities:

This court in Pelelas v. Caterpillar Tractor Co., 7 Cir., 113 F.2d 629, 632, said: "* * * under it [Rule 23] *the court is at liberty to consider the number appearing on record as contrasted with the number in the class* * * * and whether the relationship between the parties to the record is unique or one identical and common with that of all others of a class * * *.

*There must be a sufficient number of persons to insure a fair representation of the class."*

Moore, in his work on Federal Practice (page 2234), says:

"* * * the question of adequate numerical representation (the number appearing on record as contrasted with the number in the class) should be considered by the trial court. There is no one percentage of the class that must be parties on the record. The mere number should not be the criterion. While three out of two hundred subscribers to a fund were held to be insufficient, one on behalf of all citizens of a town was representative. The safest rule seems, again, to be that there must be a showing of representation that will satisfy the court that the interests of the absentee parties will be adequately protected by the representative, plaintiff or defendant. This doctrine is clearly recognized by subdivision (a) of the rule under discussion."

Ruling Case Law, "Parties," Sec. 9, says: "* * * It is somewhat discretionary with a court of equity as to how many representatives of a class will, or ought to be, regarded as a fair representation of the whole class."

Some of the other authorities are:

Waybright v. Columbian Mut. Life Ins. Co., D.C., 30 F.Supp. 885, 888,—

"So, it seems settled law that a small minority of numerous interested parties may maintain a class suit in behalf of themselves and others, similarly situated for an object common to them all."

Longsdorf, in Cyclopedia of Federal Procedure, Sec. 717,—

"Representative members of a class may sue or defend in certain cases without joining all of the other members, but in every case there must be sufficient parties to insure a fair trial of the issues, although some may be omitted."

Macon Co. v. Stamps, 1890, 85 Ga. 1, 11 S.E. 442, 446, 21 Am.St.Rep. 135:

"* * * It is true that, as only two of the citizens have become parties, it is rather a small representation of the whole community; but considering the publicity of the case, and of the interest involved in it, and the fact that the suit is located in Upson county, and will be tried * * * at the county town, which is the town whose citizens are interested, there can be no cause to apprehend that the two plaintiffs on the face of the petition will be disposed, or, if so disposed, allowed, to misrepresent the community in whose behalf they have brought this suit. No doubt it is somewhat discretionary with a court of equity as to how many representatives of a class will, or ought to be, regarded as a fair representation of the whole class in a given instance. We simply rule that this is a proper case for some of the citizens to represent all, and that the number of representatives, though the smallest that could be recognized, is not, as a matter of absolute law, insufficient."

McArthur v. Scott, 113 U.S. 340, 5 S.Ct. 652, 670, 28 L.Ed. 1015:

"Where they [members of a class] are numerous, and only some of them, * * * are made parties, the court, upon being satisfied that it has a sufficient number before it to secure a fair trial of the question at issue, may hear the cause. * * * And where a suit is brought by or against a few individuals as representing a numerous class, that fact must be alleged of record; so as to present to the court the question whether sufficient parties are before it to properly represent the rights of all."

Smith v. Swormstedt, 16 How. 288, 303, 57 U.S. 288, 14 L.Ed. 942 (six plaintiffs suing for 1500, against five defendants representing a class of 3800—respectively the north and south Methodist preachers of the U. S.). The court said:

"In all cases where exceptions to the general rule are allowed, and a few are permitted to sue and defend on behalf of the many, by representation, care must be taken that persons are brought on the record fairly representing the interest or right involved, so that it may be fully and honestly tried. Where the parties interested in the suit are numerous, their rights and liabilities are so subject to change and fluctuation by death or otherwise, that it would not be possible, without very great inconvenience, to make all of them parties, and would oftentimes prevent the prosecution of the suit to a hearing. For convenience, therefore, and to prevent a failure of justice, a court of equity permits a portion of the parties in interest to represent the entire body, and the decree binds all of them the same as if all were before the court. The legal and equitable rights and liabilities of all being before the court by representation, and especially where the subject-matter of the suit is common to all, there can be very little danger but that the interest of

all will be properly protected and maintained."

■ Our conclusion is that dismissal would not be justified on the ground that plaintiffs are too few in number compared to the total number in the class.

More concerned are we with the showing that plaintiffs do not fairly insure the adequate representation of all persons who constitute the class for whom this suit is brought.

We are informed by the defendants of several relevant matters. The Sinclair Company, for example, furnished an affidavit to the effect that it had twenty-seven different kinds of jobbers' contracts in force in Illinois during the three year period involved. The Bareco Oil Company had nineteen different contracts with fifteen jobbers, in said state. The contents of their affidavits, at least in the absence of other proof, raise doubts as to, if they do not disprove, the existence of, any such liability as is asserted in the complaint.

■ We think this form of proof was proper on this motion to dismiss. Rule 43 (e); Central Mexico Light Co. v. Munch, 2 Cir., 116 F.2d 85; Railway Express Agency, Inc., v. Jones, 7 Cir., 106 F.2d 341; Pelelas v. Caterpillar Tractor Co., ·7 Cir., 113 F.2d 629; Gallup v. Caldwell, 3 Cir., 120 F.2d 90, decided May 21, 1941. These affidavits were before the court and were properly considered. Their contents were not challenged by counter affidavits or other proof.

Were there factual disputes, the court could have heard evidence and determined the conflict. As it now stands, the attack on plaintiffs' ability to insure adequate representation stands undisputed.

There are other facts which seem to us to necessitate our sustaining the order of dismissal on this ground. The instant suit was to recover damages covering three years—1934, 1935, and 1936—which, we assume were the dates selected because of the verdict in the trial of the criminal case.

Although the establishment of the unlawful combination for said three years could result in a money judgment in favor of members of the class, it would not preclude the same plaintiffs from suing to recover for other years.

Another factor worthy of consideration is that some individual plaintiffs may prefer to sue the one defendant with whom they dealt, and for the entire period for which they were entitled to recover, and in a jurisdiction of their selection, rather than in the District Court for the Northern District of Illinois, Eastern Division. Although other defendants would, because of the conspiracy, be liable for the wrongs committed by each of the co-conspirators, a claimant might well prefer a contest with one of these defendants, to a law suit with all of them.

In making the decision as to plaintiffs' ability to insure an adequate representation of all the members of the class, we have created a test, by stating the proposition in the reverse: Now assuming, as we do, that this is a proper class suit, then those of the class who are not plaintiffs will be bound by the judgment. That being the case, should this court permit the plaintiffs, on the showing before us, to bind the absent plaintiffs of this class, "for better or for worse"?

■ We are advised, and accede to the contention, that the District Court has a discretion, and the existence of that discretion narrows the scope of our investigation. The trouble with this irresponsible method of lightly disposing of cases, truly ours, is that discretion and abuse of discretion are relative rather than absolute terms. In most instances, we may say, generally, that the question of discretion is the display of sound judgment. In the proper case it may not be disturbed by an appellate court except for abuse. But what is abuse?

Determination of abuse of discretion involves the exercise, by us, of sound judgment upon the facts. If there is controversy as to facts, and if the facts themselves largely define the wisdom of the discretion, review by the appellate court is seldom effective and it should not be. Then appellate court's review does not include trial court's discretion.

If, however, the facts are not in dispute and it is a question of sound judgment based upon the undisputed facts which are before us as fully as before the trial judge (i. e., by affidavits); we are in about as good a position as he to say whether the discretion has been wisely exercised. In short both trial and appellate courts have the same situation upon which to exercise the same sound judgment.

■ It seems to us that this is a case, which, upon the foregoing facts, falls within in the first category of discretionary action. There is room for the play of discretion by the trial judge. The facts and the infer-

ences are not free from dispute. There are numerous possibilities which are real and substantial as distinguished from conjectural or possible, from which different individuals might reach different judgments. The District Judge concluded that the plaintiffs had not shown their ability to insure adequate representation of the absent members of the class. The evidence justified Judge Igoe's conclusion. If this question had not been presented to him first, and we were exercising our judgment, a like conclusion would be reached.

We think this conclusion necessitates a statement by us as to the bases of our conclusion.

In other words, what proof could the plaintiffs have offered, and how could it have been shown?

 They could have offered affidavits in opposition to defendants' or they could have offered them in support of their motion for injunction. In these affidavits they could have shown more in detail the theory and facts as to damages upon which they base their right to recovery. They could have met the proof that there were many different kinds of jobbers' contracts outstanding, by a showing, if such showing could be made, that the recoverable damages would be the same under all the contracts. They could have, and we think should have, shown some of the proof tending to establish their charge that they suffered damages as jobbers by virtue of the defendants' raise in prices to them. They could, and should, have supplied some proof that others in the class desired this suit to go on and that they knew of few, or no instances, where the members of the class were opposed to the prosecution of this class suit. Affirmative notice could have been given by them to others in the class, showing that they had, by letter or by newspaper, brought the existence of the present suit to the attention of others of the class. The reaction of the others could have then been shown to the court. No one of these facts, in and of itself, would be completely determinative of plaintiffs' ability to maintain this suit. However, the test, the application of which this rule necessitates, calls for some enlightenment of the court.

There should be no obstruction thrown in the way of plaintiffs by the defendants, whose interests may well be to obstruct and impede the enforcement of claims against them. They would, undoubtedly, prefer to defend against each one of these claimants, separately. The chances of tiring the litigant or putting him to such large expense that his right of action would be a remediless one, may be part of the defensive tactics of a combination of such large companies as are here sued. On the other hand, the court should not tie the hands of a large number of individuals of one class, by an action brought by a few members of the class, whom they do not care to have represent them, or to whom they do not wish to entrust the prosecution of their claim. The number, the *character,* the size of the claimants of this class, as well as the nature of the defense (that is dilatory and expense-creating, or on the merits) must be considered, and then intelligent action will be more probable.

 Because we cannot say that the two plaintiffs herein, insured the adequate representation of all, we are not justified in setting aside the order of the District Court in this respect.

(c) There are several other questions: First is the nature of the present suit. We deem this unimportant, in view of our disposition of the case on other grounds.

 Defendants contend that the suit should be dismissed because it can not be maintained as an equitable action. While it must be conceded that a suit to recover damages under the Clayton Anti-Trust Act is ordinarily one at law (Fleitmann v. Welsbach Street Lighting Co., 240 U.S. 27, 36 S.Ct. 233, 60 L.Ed. 505) we are, nevertheless admonished by Rule 2 of the Rules of Civil Procedure that there shall be but one form of action. And the prevention of a multiplicity of suits, in and of itself, is a ground of equity jurisdiction. Reconstruction Finance Corp. v. Central Republic Trust Co., D.C., 11 F.Supp. 976; Gramling v. Maxwell, D.C., 52 F.2d 256; Babka Plastering Co. v. City State Bank, 264 Ill.App. 142; West's Lifetime Federal Digest, Equity, ☞51. The avoidance of a multiplicity of suits is one of the purposes of a class action. We therefore reject defendants' position in this respect.

 (d) Plaintiffs' motion for an injunction, which was granted, and then vacated, raises another question. We are clearly convinced that the court properly vacated the injunction which it first granted. The reasons which support our conclusion are that plaintiffs have failed to show that their present suit "insures the adequate representation" of all members of the class.

Elaboration of reasons for this conclusion, we need not make.

It is also of questionable wisdom, at the beginning of a suit, when the various members of the class are endeavoring to determine whether they should join in the action, to attempt to coerce them or influence their opinion by a court ruling. There may be, and have been, cases where the injunction against suit by other members of the class in other jurisdictions, is clearly proper. This is not one of them.

(e) Dismissal of the suit is assailed. Its dismissal as a class suit, we think was right. But it does not follow the suit should have been dismissed as to plaintiffs, who, individually, have stated a good cause of action against defendants.[6] Even if not consolidated under Rule 42(a) and United Mine Workers v. Coronado Co., supra, they would have a right to bring and maintain this action to recover their individual damages.

In so far as the judgment of the District Court dismisses the entire suit, it can not stand. In so far as it holds that plaintiffs, upon the showing made, cannot sue for themselves and all others,—maintain a class suit—it is approved.

The judgment of the District Court is reversed with directions to enter one in accordance with these views. Appellants shall recover their costs.

---

[6] Rule 21 of Rules of Civil Procedure. Moore on Federal Practice, pp. 2120, 2188; House v. Mullen, 22 Wall. 42, 89 U.S. 42, 22 L.Ed. 838; Lynn v. United States, 5 Cir., 110 F.2d 586.