HOGAN *v.* HILL.

5-1665                                   318 S. W. 2d 580

Opinion delivered December 8, 1958.

*Mann & McCulloch,* for appellant.

*Fletcher Long* for Third party appellant.

*McMath, Leatherman & Woods* and *Willis V. Lewis,* for appellees.

PAUL WARD, Associate Justice. This is a personal injury suit, involving three parties, growing out of an automobile collision.

Appellee, Harold L. Hill, who was injured, was in an automobile driven by John W. Short in a westerly direction on a 5% down grade. This car collided with a pick-up truck owned by Louie Moffatt and driven in the opposite direction, by Louis Melton. The collision occurred just east of Forrest City on Highway No. 70 which, at that portion of the road, was being repaired by Ben M. Hogan & Company under contract with the Arkansas Highway Commission.

The complaint and amended complaint filed by Hill stated (as to all material portions) in substance: The defendants (hereafter called the Hogan Co.) are partners d/b/a Ben M. Hogan & Company. The Hogan Co. entered into a contract with the said Highway Commission to build and construct approximately 11.7 miles (including the portion where the accident occurred) of grading, minor drainage structures, gravel base, gravel or crushed stone shoulders, widening and resurfacing with asphaltic concrete hot mix, etc., having a crown of 32.4 feet and typical surface 24 feet in width, known as job No. 11563. The Hogan Co., for the protection of the traveling public, agreed to the following provisions in said contract:

"608.14 Public Safety. The Contractor shall schedule his operations in widening existing pavement under traffic so that in no case shall trenches be open on both

sides of the existing pavement at one time; the base course for widening on the side first opened shall be completed to the specified grade and shoulder material pulled back against the outside edge off the base course and that side opened to traffic before the trench on the opposite side is opened.

"Appropriate signs, lights and barricades shall be furnished and installed by the contractor to protect public traffic where trenches for widening are open alongside existing pavement."

It was further alleged that the Hogan Co., under the said contract, was obligated to the public and the plaintiff to perform said work in accordance with 608.14 copied above. The complaint after setting out in detail how the accident happened and how the cars collided, states that the accident was caused by the failure of the Hogan Co. to comply with the safety provisions of the contract, enumerating five such instances. In the amendment to the complaint it was also alleged that it was the common law duty of the Hogan Co. to use ordinary care to protect plaintiff from injury while using the reconstructed portion of the highway, as well as the duty to comply with safety provisions of the contract. The nature and extent of the injuries were set out, and the prayer was for judgment in the amount of $75,680.

The answer by the Hogan Co. was a general denial and contributory negligence on the part of Hill, and further, that Hill was on a joint enterprise with John W. Short who was the driver of the car and who was himself negligent. It was further alleged by the Hogan Co. that the accident was caused by the negligence of Louis Melton the driver of a pick-up truck owned by Louie Moffatt, which truck collided with the car driven by Short. The acts of negligence on the part of Melton were set out. The prayer was that Hill's complaint be dismissed.

In addition to the above answer, the Hogan Co. filed what was termed a "Third Party Complaint" in which it was in substance stated: If it be found that the Hogan

Co. and Melton were both negligent then the former was entitled to contribution against the latter. The prayer was that Hill's complaint be dismissed or, in the alternative, that contribution be awarded.

In answer to the third party complaint, Melton and Moffatt entered a denial, and cross-complained against the Hogan Co. On interrogatories the jury found, after a trial, that: (a) The Hogan Co. was guilty of negligence (b) Hill suffered damages in the amount of $25,000; (c) Short was not guilty of contributory negligence; Hill was not guilty of contributory negligence; (d) Melton and Moffatt were guilty of negligence; (e) The Hogan Co.'s negligence contributed to the cause of damages 80% and Melton and Moffatt's negligence 20% and; The Hogan Co.'s negligence did not contribute to Melton and Moffatt's damages. Judgments of the trial court were entered in accordance with the jury findings. The Hogan Co. and also Melton and Moffatt prosecute this appeal.

The Hogan Co. relies on three grounds for a reversal. *One.* Plaintiff introduced no substantial evidence of negligence. *Two.* It was error for the court to admit Part 6 of the contract in evidence. *Three.* It was error to give Hill's instruction No. 7. In addition to the above it is insisted that the verdict is excessive.

*One. Substantial evidence.* At approximately 6:15 P. M. on March 15, 1957 John W. Short, accompanied by Hill and one other passenger, was descending a hill on U. S. Highway No. 70, just east of Forrest City headed west for his home in Little Rock. At the same time Louis Melton was ascending the hill from the opposite direction in a pick-up truck owned by Louie Moffatt. As Melton approached the Short car and in an effort to pass it the right rear wheel of the pick-up truck ran off the edge of the pavement on its right side or the south side of the highway, and the truck swerved across the center line of the pavement into the path of the Short car. This forced the Short car onto the north shoulder of the highway where it turned over, killing Short and injuring Hill. At the time of the accident

that portion of Highway 70 was being reconstructed by the Hogan Co. as a part of State Highway Job No. 11563. The work included repairing shoulders, and widening and resurfacing with hot asphalt mix. The highway, before repairs, was paved with concrete 20 feet wide. At the time of the collision the north shoulder had been excavated and refilled with a sandy material some two or three months previously. There was testimony that it had rained considerably in the mean time and that the shoulder had become somewhat rough and soft, that it was as much as 3 inches lower than the pavement, and that it had not been worked since first installed. There was testimony on the part of the Hogan Co. that adequate warning signs were installed on both sides of the road, but there was testimony by appellee's witnesses from which the jury could have found otherwise.

The shoulder on the south side of the road at the scene of the collision had been excavated to a depth of about 18 inches below the pavement. This excavation had just been completed a few hours before the accident and, of course, had not been filled. It is admitted that the portion of the highway in question bears heavy traffic—approximately 4,000 vehicles each day. There was a great deal more testimony, much of it conflicting, by a large number of witnesses but we feel it would serve no useful purpose to set it out, for we think it is clear from the above that there was substantial evidence to support the jury's finding of negligence on the part of the Hogan Co.

Two. *Part 6 of the Contract.* The Hogan Co. contends it was reversible error for the court to allow the introduction in evidence of Part 6 of the contract between it and the Highway Commission. For several reasons we think no such error appears in the record.

It will be noted that Hill's complaint states a cause of action in tort based not only on the usual common law of negligence but based also on the Hogan Co.'s failure to comply with the regulations in the contract relative

to public safety. This, we think he had a right to do. See: *Prosser* on *The Law of Torts*, 1955 Second Edition § 81 at page 478 and page 482; Annotated Cases 1913 (c) 217; *Pugh* v. *Texarkana Light & Traction Co.*, 86 Ark. 36, 109 S. W. 1019; *Hill* v. *Whitney*, 213 Ark. 368, 210 S. W. 2d 800, and; *Collison* v. *Curtner*, 141 Ark. 122, 216 S. W. 1059.

When Hill offered in evidence, as Exhibit 5, the contract between the Hogan Co. and the Highway Commission, this proceeding occurred:

*The Court*: "Is it necessary to put it all in there?"

*Atty. for Hill*: "We think the whole contract is pertinent."

*The Court*: "Without objection let it be introduced."

*Atty. for the Hogan Co.*: "We object to certain portions of it, that is set out in plaintiff's complaint."

*The Court*: "That is the part you are objecting to?"

*Atty. for the Hogan Co.*: "We object to all of what is known as 'Part 6' in there."

*The Court*: "Is that the part that is set out in plaintiff's complaint?"

*Atty. for Hill*: "Yes, sir."

*The Court*: "The objection is overruled and the plaintiff will be permitted to introduce the contract."

We have already said that Hill had the right to base a tort action on the failure of the Hogan Co. to comply with the safety provisions in the contract. This being true it must necessarily follow that the jury must know the contents of the contract and also know the safety provisions. It is conceivable of course that in many cases, or even in this case, some parts of the contract would not be relevant. In such event, when the entire contract is offered in evidence by the plaintiff as here, the burden would be on the defendant to make it clear to the court

just what part of the contract is objectionable and the specific reasons therefor. In this instance Hogan did point out as objectionable that part of the contract "that is set out in plaintiff's complaint." The part referred to is shown as "608.14" and is set out in full, *supra*, in this opinion. Provision 608.14, it must be understood, is only a small portion of Part 6 which consists of 21 pages and Part 6 is only a portion of the entire contract which comprises more than a hundred pages. We think the court was correct in allowing this portion of the contract to be introduced. Hogan's main objection is that § 608.14 would be relevant only if and when he was in the process of actually putting down black-top or concrete on the shoulders. We cannot agree with this interpretation upon a careful examination of the language in § 608.14 and upon considering it in context with the rest of the contract. The substance of the section is that "in no case shall trenches be opened on both sides of the existing pavement at one time," and that one side must be open for traffic before the other side is excavated. The jury could have found this was not done here. It seems to us that it makes no difference, from a safety standpoint, whether the topping is actually being applied or whether the shoulders are merely being prepared for that purpose. The "base course," as shown by other parts of the contract, refers to the use of certain materials in building up the shoulders preparatory to a completed job.

*Three.* Finally it is ably contended that it was reversible error for the court to instruct the jury to find for Hill if the Hogan Co. failed to use ordinary care to comply with the contract provisions relating to the safety of the traveling public. This contention is based on Hill's instruction No. 7, which reads as follows:

"You are instructed that in this case the defendant Ben Hogan entered into a contract with the State of Arkansas to widen and re-surface a portion of Highway No. 70 east and west of Forrest City, and under said contract defendant Hogan undertook to perform certain

duties with respect to the safety of the traveling public, using said highway while the work was in progress. The law imposes upon defendant Ben Hogan the duty of using ordinary care to comply with the provisions of the contract inserted for the safety and protection of the traveling public. In determining whether defendant Hogan was negligent, as alleged in complaint of plaintiffs Nina Fay Short and Harold Hill, you may take into consideration the provisions of the contract between Hogan and the State of Arkansas, inserted for the protection of the traveling public and whether the defendant Hogan used ordinary care to comply with said provisions. If you find from a preponderance of the evidence that defendant Hogan failed to use ordinary care to comply with the provisions of said contract relating to the safety of the traveling public and said failure to use ordinary care contributed to proximately cause the death of J. W. Short and the injuries to Harold Hill, your verdict should be for the plaintiffs; unless you find for the defendants under other instructions given you.''

To the above instruction appellant objected generally and also specifically on the grounds that it was confusing to the jury and that it permitted the jury to consider whether or not the Hogan Co. complied with subsection 608.14 which is a portion of Part 6 discussed above, and which has already been set out as a part of the complaint.

It has not been pointed out to us, nor do we see, how the instruction confused the jury.

The objection with reference to § 608.14 has already been disposed under part ''Two'' above. Since, as before stated, this section was properly introduced in evidence the jury naturally had a right to consider it.

*Amount of Judgment.* This kind of a question always gives the court great concern because there is no definite satisfactory rule for guidance. Ordinarily the amount of damages fixed by a jury will not be disturbed unless based on erroneous instructions or unless it is shown to be the result of prejudice or passion, or un-

less it shocks the sense of justice, or unless it is not supported by substantial evidence. It is the latter alternative which is stressed by appellant in asking us to reduce the amount of the judgment in this instance. In brief it is pointed out that Hill suffered three facial cuts, spent one night in the hospital, and incurred only $353.00 in medical expenses; that he was unable to work for only about four months; that he earned approximately $5,000 a year, and; that he is now employed at the same salary.

However the record reveals other facts which the jury had a right to consider. Hill, who was 36 years old, had been employed by the Western Electric Company for 16 years and for the past two years had earned around $7,000 each year. His duties required him to lift objects weighing from 50 to 100 pounds, but the temporary work which he is now doing requires no such physical exertion. It is not known that he will be retained, especially at the same salary, unless he is able to do heavy work. Doctor Gilbert O. Dean stated Hill suffered three severe lacerations of the face, an injury to his left eye, and trauma around the head, that he suffered severe pains through his chest and back, and had a piece out of the bridge of his nose. X-rays were taken shortly after the accident, which, according to Dr. Dean, revealed a compression type fracture of the 6th vertebra of the dorsal region of the back. He stated: "It is what is known as a compressed fracture. Here the disk sits here and it has 50% compression at the front of it, of the vertebra, it occurred when he was thrown forward, it squashed the front part together." Dr. Dean further stated that there was curvature of the spine still present, and that the condition was permanent. There also appeared a whiplash injury in his neck according to the doctor who also referred to the spinal injury as a broken back. Hill stated he suffered severe pains as a result of the various injuries, that he could sleep only on his back with his knee over a big roll of blankets and a board under his kidneys, or, if he slept on his side, he had to keep his knees drawn up in a coil. He also stated that he was still in pain and never free of it, and that he

couldn't hope to hold his present job unless his condition improved. This view was supported by Hill's supervisor.

With the above picture before us we cannot say there is no substantial evidence to support the jury's verdict. We have examined the various cases cited by appellant where judgments were reduced by this court but do not consider them as controlling in this instance.

In view of what has been said it follows that the judgment in favor of Hill must be, and it is hereby affirmed.

*On Cross-Appeal.* Melton and Moffatt, the third party defendants, in seeking a reversal present an able argument on a very interesting question. They point out, and we must agree, that their interest was in conflict with the interest of the Hogan Co. On this basis they contend they were entitled to three peremptory challenges in the selection of the jury in addition to the three such challenges the court allowed the Hogan Co. We can readily understand the justice and fairness of this view, but we think it is one that addresses itself to the legislature and not this court. Ark. Stats. § 39-229 which deals with peremptory challenges says "Each party shall have three (3) peremptory challenges." Section 39-231, in part, provides: "Where there are several persons on the same side, the challenge of one shall be the challenge of all under this subdivision." As was stated in the case of *Crandall* v. *Puget Sound Traction, Light & Power Co.*, 77 Wash. 37, 137 P. 319, in dealing with this same question, "the right of peremptory challenge is wholly a creature of statute, and not of common law." Looking solely to our statutes, referred to above, the answer still is not clear. The first section refers to each *party* without defining party. Likewise there is an element of uncertainty in the use of the words "on the same side" as used in the latter section. We have concluded, however, that the decisions of this court and other courts have resolved this uncertainty against the contention of Melton and Moffatt here. See: *Waters-Pierce Oil*

*Company* v. *Burrows,* 77 Ark. 74, 96 S. W. 336; *Fidelity-Phenix Fire Ins. Co.* v. *Friedman,* 117 Ark. 71, 174 S. W. 215; *Fort Smith Light & Tr. Co.* v. *Bailey,* 153 Ark. 574, 241 S. W. 42, and; *Crandall* v. *Puget Sound Light and Power Co., supra.*

In the *Burrow* case in dealing with the question and the same statutes as here, we said: "All the defendants are not entitled in the aggregate to more than three peremptory challenges. The statutes do not provide that they shall, *in any case,* be entitled to more." (our emphasis.) In the *Friedman* case where this question is discussed at some length it was held that after cases are consolidated only three challenges are allowed each side under our statute. It was further pointed out that if several defendants on one side of a law suit were allowed three challenges each then the plaintiff on the other side would be entitled to three challenges for each defendant.

The cause is therefore affirmed both on direct appeal and on cross-appeal.

Affirmed.

HOLT and ROBINSON, JJ., dissent.

Justice WILLIAM J. SMITH not participating.